HUGHES MASONRY COMPANY, INC.,
Plaintiff-Appellee,

v.

GREATER CLARK COUNTY SCHOOL
BUILDING CORPORATION,
Defendant.

J. A. CONSTRUCTION MANAGEMENT
CORPORATION, Defendant-Appellant,

v.

INSURANCE COMPANY OF NORTH
AMERICA, Third Party
Defendant-Appellee.

No. 80–2817.

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1981.

Decided Sept. 28, 1981.

John P. Price, Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., for defendant-appellant.

Don A. Tabbert, Duvall, Tabbert, Lalley & Newton, Indianapolis, Ind., for plaintiff-appellee.

Before FAIRCHILD and CUDAHY, Circuit Judges, and GRANT *, Senior District Judge.

* Honorable Robert A. Grant, Senior Judge from the Northern District of Indiana, is sitting by designation.

CUDAHY, Circuit Judge.

J. A. Construction Management Corporation ("J. A.") appeals from the district court's denial of its motion to compel arbitration. We vacate and remand for further proceedings consistent with this opinion.

I.

On February 15, 1975, James Associates Architects and Engineers, Inc. ("James Associates") entered into an agreement with the Greater Clark County School Building Corporation ("Clark") to provide the architectural and construction management services necessary for the construction of the Charlestown and Jeffersonville Middle Schools in Clark County, Indiana. James Associates was authorized under this agreement to assign project managers at both sites to oversee and coordinate all construction operations. Pursuant to this authority, James Associates executed a contract with J. A., under which J. A. was to perform the construction management services relating to the middle school projects.

On November 30, 1976, Hughes Masonry Company, Inc. ("Hughes") entered into an agreement with Clark to provide masonry services for construction of the two schools. Pursuant to the terms of this contract, J. A. was designated as construction manager for both projects. The contract also incorporated by reference the American Institute of Architects' "General Conditions," which, together with other contract documents, outlined the responsibilities of Clark, James Associates, J. A. and Hughes. Section 7.10.1 of the "General Conditions" provided that all disputes "arising out of, or relating to, this contract or the breach thereof ... shall be decided by arbitration." [1]

Several disputes arose soon after Hughes began its work on the school building projects in late summer of 1977, and, on March 18, 1978, Clark terminated its con-

1. The .contracts between Clark and James Associates and James Associates and J. A. contained similar arbitration clauses.

tract with Hughes. Clark's action was based on Hughes' alleged breach of its contractual obligations. Clark hired another contractor, allegedly at a substantial increase in cost, to complete the masonry work for the building projects. Therefore, in an effort to recover its alleged increase in costs from Hughes, Clark filed, on April 17, 1978, pursuant to Section 7.10.1 of the "General Conditions," a demand for arbitration of its dispute with Hughes with the American Arbitration Association.

Hughes subsequently filed separate actions against Clark in the United States District Court for the Southern District of Indiana and against J. A. in the Superior Court of Marion County, Indiana. In the district court, after Clark sought to compel arbitration, Hughes moved to enjoin any arbitration proceedings. On September 18, 1979, Hughes amended its complaint in federal court to add J. A. and the American Arbitration Association as defendants.[2] Thirteen days later, on October 1, 1979, before J. A. had answered the amended complaint, the district court entered an order enjoining all defendants, including J. A., from proceeding to arbitration.

On May 28, 1980, after filing an answer which raised arbitration as an affirmative defense, J. A. filed a motion to compel arbitration of all contract disputes between itself, Hughes and Clark. The district court denied J. A.'s motion in an order dated December 12, 1980, and J. A. filed a timely appeal from that decision.

## II.

Before J. A. was joined as a defendant in this action, Hughes opposed Clark's motion to compel arbitration, *inter alia*, on the ground that J. A. could not be "made part of the arbitration proceedings." In support of its position, Hughes cited *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.*, 308 Minn. 20, 240 N.W.2d 551 (1968), for the proposition that arbitration is not appropriate if all the parties to a dispute cannot be compelled to participate in the arbitration.[3]

After the district court filed its order of October 1, 1979, J. A. filed its answer to Hughes' amended complaint and its motion to compel arbitration, in which J. A. agreed to participate in and be bound by arbitration of the disputes between the parties. Therefore, the concern articulated in *Prestressed Concrete* is no longer relevant, since, if arbitration is now compelled, all parties to this dispute would be included in the proceedings and bound by the determination.

Hughes now argues, however, that it cannot be required to arbitrate because J. A. is not entitled to invoke the arbitration provision of the Hughes-Clark agreement since it is not a party to that agreement.

■ Whatever the merit of this argument, we believe Hughes is equitably estopped from asserting it in this case, because the very basis of Hughes' claim against J.A. is that J.A. breached the duties and responsibilities assigned and ascribed to J.A. by the agreement between Clark and Hughes.

Hughes has characterized its claims against J.A. as sounding in tort, *i. e.*, intentional and negligent interference with contract. In substance, however, Hughes is attempting to hold J.A. to the terms of the Hughes-Clark agreement. Hughes' complaint is thus fundamentally grounded in J.A.'s alleged breach of the obligations assigned to it in the Hughes-Clark agreement.[4] Therefore, we believe it would be

**2.** Hughes also moved to dismiss the state court action against J. A.

**3.** The district court relied on the *Prestressed Concrete* decision in its October 1, 1979, order enjoining defendants from proceeding to arbitration.

**4.** In resisting Clark's effort to arbitrate its claims with Hughes, Hughes urged that J.A. was a necessary party to the arbitration. This argument is valid only to the extent that Hughes' claims against J.A. are closely related to the contract. That is, if J.A.'s allegedly improper acts were not integrally related to the contract (*e. g.*, torts committed outside the scope of J.A.'s contractual authority), then there would have been no need to include J.A. in an arbitration of the contractual disputes between Hughes and Clark. Therefore, Hughes

manifestly inequitable to permit Hughes to both claim that J.A. is liable to Hughes for its failure to perform the contractual duties described in the Hughes-Clark agreement and at the same time deny that J.A. is a party to that agreement in order to avoid arbitration of claims clearly within the ambit of the arbitration clause. "In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F.Supp. 688, 692 (S.D.N.Y.1966). *See also Avila Group, Inc. v. Norma J. of California*, 426 F.Supp. 537, 540 (S.D.N.Y.1977) ("To allow [defendant] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.").

Although only Hughes and Clark are signatories to the Hughes-Clark agreement, that agreement identifies James Associates as the architect and J.A. as the construction manager for the school projects. Section 2.3.1 of the agreement provides that the "Architect and Construction Manager will be the Owner's representatives during construction [and] will have authority to act on behalf of the Owner, to the extent provided in the Contract Documents ...." Subsequent provisions of the agreement set forth various duties that James Associates and J.A. are to perform on behalf of the owner, including the scheduling and coordination of Hughes' work on the project, the processing of Hughes' payment applications and the certification of Hughes' work for payment by Clark. The Hughes-Clark agreement also gives J.A. the authority to approve original and revised work progress schedules prepared by Hughes, to approve Hughes' operations on the project sites and to determine whether materials and equipment used by Hughes are defective.[5]

Presumably, James Associates and J.A. are not contractually liable for breach of obligations set forth in the Hughes-Clark agreement since they are not parties to that agreement. Rather, James Associates was obligated to perform the duties of construction management by virtue of its contract with Clark, which imposed those duties upon James Associates in consideration of 7.5% of the total construction cost. The construction management duties were in turn imposed on J.A. by virtue of the James Associates-J.A. contract (under which J.A. was to receive 3% of the total construction costs).[6]

But Hughes seeks in this action to hold J.A. responsible for its failure to perform (or its improper performance of) the obligations set forth in the Hughes-Clark agreement. In Count I of its amended complaint, for example, Hughes alleges that "Clark and/or its construction manager" breached and were in default of the Hughes-Clark agreement. And, in Count III, Hughes alleges that J.A., "instead of

argued, in response to Clark's motion for stay of proceedings until arbitration is completed, that J.A.'s misfeasance constituted a violation of the Hughes-Clark contract. For example, in its March 12, 1979, brief in response to Clark's motion for a stay, Hughes argued, *inter alia*, that J.A.'s acts "amounted to an abandonment of the contract both by Clark and J.A." Similarly, an affidavit of Hughes' president submitted in support of Hughes' March 12, 1979, brief states in part that "[f]rom the very inception of the agreement, Clark, in conjunction with its construction manager, committed acts that breached the covenants, representations and warranties set out in the construction agreement" and that "Clark and the construction manager, by committing the acts [which are listed in subparagraphs A through E and J of paragraph 30 of Hughes' complaint, *see note 6, infra*] as well as other acts, specifically and

intentionally abandoned the agreement from its very inception...." Hughes cannot now be heard to say for purposes of avoiding arbitration that its claims against J.A. are not fundamentally grounded in the contract.

**5.** The agreement further provides that Hughes "shall indemnify ... the Construction Manager" for certain damage claims arising out of the negligent acts or omissions of Hughes or its agents.

**6.** This contract is in the form of a letter from the president of J.A. to the president of James Associates incorporating a "Standard Form Agreement Between Owner and Construction Manager," which spells out in detail the duties to be performed by J.A. for Clark.

carrying out its duties and responsibilities contained in the agreement," interfered with the contractual relationship between Clark and Hughes. Although Count III sounds in tort, the acts that Hughes alleges as constituting interference with the agreement in fact consist essentially of J.A.'s alleged failure to properly perform various duties ascribed to J.A. by the Hughes-Clark agreement.[7] Similarly, in its "Specific Contentions" filed at the request of the district court on August 29, 1980, Hughes alleged, as the basis for its claims against J.A., that

J.A., as Clark's "agent," failed to carry out various duties and responsibilities specified in the Hughes-Clark agreement and therefore "intentionally interfered" with that agreement.

■ Hughes has thus merely attempted to characterize alleged failures to perform various construction management duties (or their improper performance) as tortious interferences with its contractual relations with Clark. Although we question the appropriateness of this characterization,[8] the

---

7. Count III of Hughes' amended complaint reads in part:

    30.  Commencing on or about March 1, 1977, and continuing until on or about March 14, 1978, the defendant J.A. Construction, instead of carrying out its duties and responsibilities contained in the Agreement and outlined in rhetorical paragraphs 25 and 26 above, interfered with the contractual relationship between defendant Clark and plaintiff as follows:

    A.  Defendant J.A. Construction delayed the plaintiff in the initial access to the site.

    B.  Defendant J.A. Construction failed to provide adequate work area access to the plaintiff.

    C.  Defendant J.A. Construction failed to provide door bucks and other items that were necessary for plaintiff to perform its work.

    D.  Defendant J.A. Construction failed to coordinate the work of the other contractors.

    E.  Defendant J.A. Construction failed to properly schedule the work.

    F.  Defendant J.A. Construction unreasonably caused plaintiff to work in the winter in spite of the specific contractual representation to the contrary.

    G.  Defendant J.A. Construction refused, in bad faith, to negotiate equitable adjustments with the plaintiff for extra work and costs it was clearly, under the contract, entitled to.

    H.  Defendant J.A. Construction refused to grant proper time extensions to the plaintiff.

    I.  Defendant J.A. Construction failed to deal with plaintiff in good faith to mitigate its damages.

    J.  Defendant J.A. Construction actively interfered with plaintiff's prosecution of its work.

    K.  Defendant J.A. Construction failed to cause plaintiff to receive its progress payments on a timely basis.

    L.  Defendant J.A. Construction rendered plaintiff's work impossible to perform.

    31.  On March 14, 1978, defendant Clark terminated the Agreement. The termination of the Agreement was wrongful for the following reasons:

    A.  Defendant Clark and defendant J.A. Construction were in default of their obligations as hereinabove alleged at the time said termination occurred.

    B.  Defendant Clark and defendant J.A. Construction's acts, which constitute a breach of the Agreement, amounted also to an abandonment of the Agreement.

Count IV of Hughes' amended complaint repeats the factual allegations set forth in Count III in support of the claim that J.A. "negligently interfered with the contractual relationship" between Clark and Hughes.

8. Indiana recognizes the "tort of interference with a contract relationship by inducing breach of contract." *Monarch Industrial Towel and Uniform Rental, Inc. v. Model Coverall Service, Inc.*, 381 N.E.2d 1098 (Ind.Ct.App.1978). The elements of this tort are as follows:

    (1) existence of a valid and enforceable contract;

    (2) defendant's knowledge of the existence of the contract;

    (3) defendant's intentional inducement of breach of the contract;

    (4) the absence of justification; and

    (5) damages resulting from defendant's wrongful inducement of breach.

*Id.* at 1099. *See also Claise v. Bernardi*, 413 N.E.2d 609 (Ind.Ct.App.1980); *Daly v. Nau*, 167 Ind.App. 541, 339 N.E.2d 71 (1976); *Helvey v. O'Neill*, 153 Ind.App. 635, 288 N.E.2d 553 (1972).

Although we need not decide the question, it appears to us to be at best uncertain whether the operative facts alleged in Hughes' complaint are sufficient to suggest that J.A. intentionally induced Clark to breach its contract with Hughes. Rather, as set forth in Hughes' "Specific Contentions," the facts as alleged appear to suggest only that the contract was breached by Clark, through its agent J.A., which in turn suggests breach of the Clark-James Associates contract (which imposed the duties in question on James Associates) and, in turn, of the James Associates-J.A. contract (which next imposed the relevant duties on J.A.).

facts alleged constitute breaches of obligations spelled out in the Hughes-Clark agreement. Ultimately, therefore, Hughes must rely on the terms of the Hughes-Clark agreement in its claims against J.A. Hence, Hughes is estopped from repudiating the arbitration clause of this agreement, upon which it relies.[9]

The district court's order is therefore vacated and remanded for further proceedings in accordance with this opinion.

It is doubtful whether an agent's acts within the scope of his employment would ever constitute tortious interference with his principal's contract with a third party. Cf. Daly v. Nau, 339 N.E.2d at 76 n.6 ("It has also been recognized that an officer or director of a corporation is not liable for inducing the corporation's breach of its contract if the officer or director acts within the scope of his official duties on behalf of the corporation and not as an individual for his own advantage").

9. Even assuming that Hughes' complaint states a cause of action for tortious interference with contract, we believe Hughes, in the peculiar circumstances before us, is estopped from denying J.A. the benefit of the arbitration clause with regard to claims that are as intimately founded in and intertwined with the underlying contract obligations as Hughes' claims appear to be here. The outcome urged by Hughes would have the tail wagging the dog, since it would allow a party to defeat an otherwise valid arbitration clause simply by alleging that an agent of the party seeking arbitration has improperly performed certain duties under the contract and thereby committed a tort that is so integrally related to the subject of arbitration between the principal parties as to constitute a bar to such arbitration.