RECOLD, S.A. DE C.V., a Mexican
corporation, Appellant,

v.

MONFORT OF COLORADO, INC., a
Delaware corporation, Appellee.

No. 89–1146.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1989.

Decided Jan. 9, 1990.

Bartholomey L. McLeay, Omaha, Neb.,
for appellant.

Dirk T. Biermann, Denver, Colo., for appellee.

Before ARNOLD and MAGILL,
Circuit Judges, and LARSON,* Senior
District Judge.

LARSON, Senior District Judge.

Recold, a Mexican corporation which
manufactures refrigeration equipment, appeals from the district court's[1] denial of
Recold's motions to compel arbitration and
to stay proceedings instituted against Recold in Colorado state court. Recold argues a remote purchaser of its refrigeration units, Monfort of Colorado, should
be bound by an arbitration provision in the
contract between Recold and the company
Monfort bought the units from, Central Ice

---

* The HONORABLE EARL R. LARSON, Senior
United States District Judge for the District of
Minnesota, sitting by designation.

1. The Honorable William G. Cambridge, United
States District Judge for the District of Nebraska.

Machine Company. Because we agree with the district court that there is no basis for enforcing the Recold–Central Ice arbitration clause against Monfort, we affirm.

## I. HISTORY OF THE RECOLD/MONFORT DISPUTE

Recold entered into a contract with Central Ice Machine Company, a Nebraska corporation, on June 15, 1983. The agreement generally provided that Central Ice would purchase custom built refrigeration equipment from Recold. The agreement contained a provision which stated:

> All disputes arising in connection with this Agreement shall be settled in accordance with the Rules of the American Arbitration Association by one or more arbitrators appointed in accordance with the Rules. The place of arbitration shall be El Paso, Texas U.S.A.

The agreement was to remain in effect for 10 years unless terminated due to nonperformance, nonpayment, or the bankruptcy of either party.

Monfort, a Delaware corporation with its principal offices in Greeley, Colorado, began purchasing refrigeration equipment from Central Ice in January, 1986, for use in Monfort's Colorado meat packing plant. Monfort claims that after 70 of the units had been installed, they began expelling zinc flakes into the plant.[2] When attempts to resolve the problem through negotiation failed, Monfort instituted suit against Central Ice and Recold,[3] alleging breach of express and implied warranties, negligence, and product liability. Monfort's complaint requested damages for the cost of replacing the defective units, as well as consequential damages.

On November 9, 1987, Recold moved to stay Monfort's Colorado action pending arbitration.[4] While its request was under consideration by the Colorado state court, Recold also filed a petition in Nebraska federal district court to compel arbitration of Monfort's claims. Recold's petition requested the court to stay the Colorado action and mandate arbitration on the theory that Monfort was a third party beneficiary of the contract between Recold and Central Ice, and thus was bound by the arbitration provision in that contract. After two hearings, the magistrate recommended Recold's request be denied.

Shortly thereafter, the state court issued its decision on Recold's motion for a stay, ruling that Monfort was not an intended beneficiary of the contract between Central Ice and Recold and hence was not bound by their agreement to arbitrate disputes. Recold's mandamus petition was denied by the Colorado Supreme Court, and its subsequent motion for reconsideration was denied by the state district court. In ruling on Recold's motion for reconsideration, the state court specifically rejected Recold's argument that the arbitration provision constituted a valid "limitation of remedies" under Colorado Rev.Stat. § 4–2–318 (1973).

Meanwhile, Recold also filed objections to the magistrate's report, which were considered and ruled upon by the district court herein. While refusing to give preclusive effect to the Colorado court's orders, the district court agreed with the state court's analysis, holding that Monfort, a non-signatory to the Central Ice/Recold contract, was not an intended third party beneficiary of that contract and was not bound by its arbitration clause. On appeal, Recold's primary argument is that Monfort, as a *statutory* beneficiary of a seller's warranty under Colorado UCC § 4–2–318, is subject to any limitations of remedy for breach of warranty included in the Recold/Central

---

**2.** The refrigeration coils were galvanized with a process utilizing zinc. Monfort claims it was required to remove the zinc flakes from the meat stored in the refrigeration units prior to sale, resulting in damages in the form of shrinkage and labor costs.

**3.** Monfort also sued York International Corporation, a Delaware corporation which owned 49% of Recold's stock prior to November, 1987.

After that date, Recold became a wholly-owned subsidiary of York.

**4.** Because Recold is a foreign corporation, service of the complaint was formally made through Letters Rogatory issued by the Colorado court and authenticated by the Mexican Consulate. York, which had previously been served, had also moved the court, *inter alia,* to stay the action pending arbitration.

Ice contract. One of those limitations, according to Recold, is the arbitration provision at issue in this case.

## II. THE CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS

Recold's right to petition for enforcement of the arbitration provision in its contract with Central Ice stems from Chapter 2 of the Federal Arbitration Act. This Chapter pertains to enforcement of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, reprinted after 9 U.S.C. § 201. Both Mexico and the United States are parties to the Convention. As a Mexican corporation which is a signatory to an international contract containing an arbitration provision, Recold may file a petition requesting arbitration pursuant to section 206 of the Act. Section 206 allows United States courts to direct that arbitration be held in accordance with an agreement governed by the Convention. *See* 9 U.S.C. § 206.

While Article II of the Convention requires recognition only of "an agreement in writing," defined as "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams," Recold cites section 202 of the Act, which states that an arbitration agreement "arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention." 9 U.S.C. § 202.[5] Recold contends Monfort's "agreement" to arbitrate "arises out of a legal relationship" created by statute, i.e., Colo. Rev.Stat. § 4-2-318, which the Convention requires this Court to enforce.

While the Supreme Court has announced a policy in favor of arbitration to resolve both national and international disputes, *see Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 638–39, 105 S.Ct. 3346, 3359–60, 87 L.Ed.2d 444 (1985), arbitration remains a dispute resolution mechanism which is not imposed absent both parties' consent. *See Volt Information Sciences, Inc. v. Board of Trustees*, —— U.S. ——, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United States v. Panhandle Eastern Corp.*, 672 F.Supp. 149, 153 (D.Del. 1987). "The 'liberal federal policy favoring arbitration agreements' ... is at bottom a policy guaranteeing the enforcement of private contractual agreements." *Mitsubishi Motors*, 473 U.S. at 625, 105 S.Ct. at 3353. Congress' principal purpose in enacting the Arbitration Act was "ensuring that private arbitration agreements are enforced according to their terms," *Volt*, 109 S.Ct at 1255, not creating such agreements where none exist.

No traditional "private contractual agreement" is at issue in this case. Recold concedes that Monfort is not a signatory to any agreement which contains an arbitration provision, and we agree with the district court that Monfort is not a common law third party beneficiary of the Recold/Central Ice contract, which was entered into three years prior to any purchases of refrigeration equipment by Monfort. *See generally Gallagher v. Continental Insurance Co.*, 502 F.2d 827, 833 (10th Cir.1974). Recold nonetheless maintains an "agreement" to arbitrate arises by operation of Colorado UCC law.[6] We are thus

---

**5.** 9 U.S.C. § 2 provides that a written agreement to arbitrate disputes shall be valid and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." Section 2 pertains to maritime transactions as well as to transactions involving commerce generally. *See id.;* 9 U.S.C. § 1.

**6.** In addressing the issue of whether a party has entered into an agreement to arbitrate under the Arbitration Act, courts are to apply general state law principles, giving due regard to the federal policy favoring arbitration. *Volt Information Sciences, Inc. v. Board of Trustees,* —— U.S. ——, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488

required to examine in some detail Colorado's UCC provisions.

### III. ARBITRATION AS A "LIMITATION OF REMEDIES" UNDER COLORADO UCC § 2–318

Recold's argument relies on section 2–318 of the UCC, a section which is generally intended to remove the defense of lack of privity between the plaintiff and the defendant in certain warranty actions. *See generally* 3 R. Anderson, *Uniform Commercial Code* § 2–318:4 (1983). Colorado is one of the minority of jurisdictions which has adopted the most liberal alternative of U.C.C. § 2–318. *See id.* §§ 2–318:2 & 3. Colorado's section 4–2–318 provides:

> A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume, or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section.

Colo.Rev.Stat. § 4–2–318 (1973). The parties in this case agree that Monfort is a party "who may reasonably be expected to use, consume, or be affected by" Recold's refrigeration equipment. Thus, under Colorado law, Monfort may maintain a cause of action against Recold for breach of warranty.

The rights of warranty beneficiaries under Colorado law may, however, be subject to certain limitations. The Official Comments to section 318, expressly adopted as the law of Colorado in *Wenner Petroleum Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 748 P.2d 356, 357 (Colo.App.1987), explain that the last sentence of section 2–318 does *not* preclude a seller from limiting remedies in the manner provided for in sections 2–718 and 2–719 of the Code when the remote purchaser is a sophisticated merchant. 748 P.2d at 357. In such a case, the limitations on remedies for breach of warranty are "equally operative against beneficiaries of warranties." *Id.* (citing Official Comment to Colo.Rev.Stat. § 4–2–318 (1973)).

Recold attempts to extend the *Wenner* Court's holding to include the arbitration provision in this case, arguing that an agreement to arbitrate all disputes is an agreement to limit available remedies to an arbitration award. While Recold has cited cases which refer to arbitration as a "remedy," none are directly applicable to the question presented here. Review of other sections of Colorado's UCC lend support to the conclusion that arbitration is *not* one of the "limitations" contemplated by Colorado law as applying to remote purchasers.

First, we note that the Colorado state district court has expressly ruled "arbitration is not a 'remedy' within the meaning of C.R.S. 4–1–201(34) and 4–2–318." Order, No. 86 CV 733 (Colo.Dist.Ct. March 24, 1989). While the district court's interpretation is not binding because the decision is not "sufficiently firm" for purposes of applying the collateral estoppel doctrine, *Carpenter v. Young*, 773 P.2d 561, 568 (Colo. 1989), it is in accord with the definition of "remedy" contained in section 4–1–201(34). Section 4–1–201(34) defines "remedy" as "any remedial right to which an aggrieved party is entitled *with or without resort to a tribunal*." Colo.Rev.Stat. § 4–1–201(34) (1973) (emphasis supplied). Moreover, sections 2–718 and 2–719, to which section 318 specifically refers, discuss "remedies" such as damages, repair, replacement, or return of goods. *Id.* §§ 4–2–718, 4–2–719. No mention is made of arbitration or of any other dispute resolution procedure. We thus find no indication that the Colorado legislature intended to include "arbitration" as a limitation which could be imposed on remote purchasers by operation of section 4–2–318.

In fact, Recold has presented no case which has held under *any* version of the UCC that a remote purchaser statutory beneficiary of a warranty may be required to arbitrate disputes because of a clause in a contract between the manufacturer and a distributor. We agree with the magistrate that Recold misunderstands the thrust of UCC § 2–318 in arguing Monfort's warranty claims arise from Recold's contract with Central Ice. The Code does not require

(1989). *See I.S. Joseph Co. v. Michigan Sugar Co.*, 803 F.2d 396, 399–400 (8th Cir.1986).

Monfort to sue under the Recold/Central Ice contract, but rather gives Monfort warranty rights against Recold independent of any contract.

## IV. CONCLUSION

The Arbitration Act "does not require parties to arbitrate when they have not agreed to do so." *Volt Information Sciences v. Board of Trustees*, —— U.S. ——, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989). Because we find no such "agreement" arises between Monfort and Recold by operation of Colorado law, the district court's order denying Recold's petition to compel arbitration and Recold's motion for a preliminary injunction is in all respects affirmed.