DUNN CONSTRUCTION COMPANY, INC., a corporation, and Federal Insurance Company, a corporation, Petitioners,

v.

SUGAR BEACH CONDOMINIUM ASSOCIATION, INC., a corporation, Altus Bank f/k/a First Southern Federal Savings & Loan Association, a federal savings bank, Respondents.

Civ. A. No. 90–0549–RV.

United States District Court,
S.D. Alabama, S.D.

March 28, 1991.

Stanley D. Bynum, Birmingham, Ala., and James B. Newman, Mobile, Ala., for petitioners.

William H. McDermott, Steven L. Nicholas and Jack W. Morgan, Mobile, Ala., for respondents.

## ORDER

VOLLMER, District Judge.

This cause is before the court on petitioners' motion to compel arbitration (tab 1), the memoranda and materials submitted in support thereof (tabs 9, 11, 12, 15, and 18), respondents' responses thereto (tabs 8, 10, 16, and 17), and respondent Altus Bank's ("Altus") motion to dismiss and brief submitted in support thereof (tab 7). After due and proper consideration of all of the above materials and of arguments made by counsel for the parties at an evidentiary hearing convened on September 18, 1990, the court concludes that Altus' motion to dismiss is due to be, and hereby is, DE-NIED, and, further, that petitioners' motion to compel arbitration is due to be, and hereby is, GRANTED, for the reasons that follow.

## BACKGROUND

On or about June 27, 1984, petitioner Dunn Construction Company, Inc. ("Dunn") and Shoreline Developers, Inc. ("Shoreline") entered into a contract (the "Dunn/Shoreline contract"). Dunn undertook to construct a 198–unit condominium project, known as Sugar Beach Condominiums ("Sugar Beach"), and related improvements to Shoreline's property located at Romar Beach in Baldwin County, Alabama. Petitioner Federal Insurance Company ("Federal"), in turn, issued a completion bond on June 27, 1984, which incorporated by reference all of the terms and conditions of the Dunn/Shoreline contract and named Shoreline and Altus as obligees. By agreement with the developers of Sugar Beach, Altus agreed to provide construction financing for the construction of the project. In return, Altus received a mortgage on Sugar Beach.

Section 7.9 of the General Conditions of the Dunn/Shoreline contract (AIA Document A–201 [1976 Ed.]) requires the parties thereto to arbitrate "all claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof...."

During the course of construction of Sugar Beach, various disputes arose between Dunn and Shoreline. Among other things, Shoreline claimed that Dunn performed defective work and failed to remedy the same. Dunn contended that Shoreline provided defective and incomplete design documents, failed to pay Dunn amounts due for base contract and extra work, and caused Dunn to incur delay costs and productivity losses. Notwithstanding the arbitration clause contained in the Dunn/Shoreline contract, Shoreline filed suit against Dunn and its surety, Federal,

in the Circuit Court of Mobile County, Alabama (the "Circuit Court"), seeking damages for alleged breaches of contract, negligence, and fraud arising out of, or related to, the Dunn/Shoreline contract. On January 23, 1986, Dunn demanded arbitration of its disputes with Shoreline, and filed a petition to compel arbitration in this court. On May 7, 1986, this court ordered Shoreline to arbitrate with Dunn [1] and ruled that Federal was a beneficiary of the arbitration provisions of the contract. Based upon that order, the Circuit Court stayed Shoreline's suit as to Dunn and Federal pending arbitration.

On or about November 6, 1986, just prior to the date of arbitration, Shoreline resolved its claims against Dunn and Federal, and Dunn resolved its claims against Shoreline. The arbitration proceedings were dismissed, all claims by Shoreline against Dunn and Federal were dismissed, and on December 15, 1986, judgment was entered in favor of Dunn against Shoreline in Circuit Court.

Prior to the settlement of the disputes between Shoreline and Dunn, but subsequent to the completion of construction on Sugar Beach, Altus foreclosed on 99 unsold Sugar Beach units. By a series of agreements with respondent Sugar Beach Condominium Association (the "Association"),[2] Altus provided approximately two million dollars ($2,000,000) to the Association to effectuate necessary repairs to Sugar Beach. Shortly after the settlement, Altus and the Association intervened in Shoreline's action against Dunn to recover sums that each had expended in repairing Sugar Beach. Their claims against Dunn were based upon alleged breaches of contract and negligence. Additionally, Altus sought recovery as obligee of the completion bond issued by Federal as surety for Dunn.

In June 1987, Dunn and Federal moved for summary judgment with respect to the claims of Altus and the Association, primarily on grounds that those claims derived from Shoreline and that the rights of Dunn vis-a-vis Shoreline already had been determined. Dunn and Federal, however, expressly reserved their right to arbitrate the claims of Altus and the Association. The Circuit Court awarded Dunn and Federal summary judgment with respect to all claims asserted by Altus and the Association.

Altus and the Association moved for reconsideration of the court's ruling, but the court denied their motions. Shortly before that denial, however, Altus and the Association filed amended complaints in intervention. Claiming to be third party beneficiaries of the Dunn/Shoreline contract, Altus and the Association asserted in their amended complaints negligence claims against Dunn. Additionally, Altus, in its capacity as obligee on the construction bond, asserted a negligence claim against Dunn and Federal. The Association also asserted a negligence claim against Federal, presumably as a third-party beneficiary of the construction bond. Furthermore, Altus stated a fraud claim against Dunn, alleging that Dunn submitted fraudulent pay applications under the Dunn/Shoreline contract.

In April 1990, again reserving the right to arbitrate all disputes between themselves, Altus, and the Association, Dunn and Federal moved to strike the amended complaints in intervention. Ultimately, the Circuit Court determined that it would per-

---

**1.** In so doing, this court determined that the Dunn/Shoreline contract has a substantial nexus with interstate commerce and that Federal is a beneficiary of the arbitration provision contained therein, rulings which the court declines to reconsider at this time. *See Dunn Construction Co., et al. v. Shoreline Development, Inc.* (Civil Action No. 86–0119–C).

**2.** Shoreline incorporated the Association, an entity which allegedly never has owned any property at Sugar Beach, in September 1984. According to Dunn, the Association was owned and controlled by Shoreline during construc-

tion, but, following foreclosure on Sugar Beach by Altus, control of the Association shifted to Altus. Also according to Dunn, the funds allegedly spent by the Association to repair Sugar Beach were advanced by Altus to the Association in settlement of a class action, alleging common law fraud and RICO violations, brought against Altus by individual unit owners. Apparently, under the terms of the settlement agreement, the Association need not repay Altus except to the extent that the Association recovers from Dunn. Thus, according to Dunn, Altus, not the Association, is the real party in interest in this matter.

mit the Association's negligence claims against Dunn to proceed and struck the remainder of the Association's complaint.

On July 17, 1990, Dunn and Federal made a demand for arbitration on Altus and the Association and, shortly thereafter, filed the instant petition to compel arbitration. Respondents refused to submit to arbitration and, instead, continued to maintain claims against both Dunn and Federal in Circuit Court. To date, according to respondents, all claims by the Association and Altus against Federal have been dismissed. The Circuit Court has preserved against Dunn Altus' and the Association's claims for negligence, and Altus' claim for fraud. Trial is scheduled to commence in Circuit Court on April 15, 1991.

## DISCUSSION

Dunn and Federal filed the instant petition pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "Act"), seeking to compel arbitration of their disputes with Altus and the Association. Under Section 4 of the Act, 9 U.S.C. § 4, a party to a written agreement which involves interstate commerce and contains an arbitration clause has a right to petition a district court to issue an order compelling arbitration. In limited circumstances, one who is not a signatory or direct party to such a contract, but whose position or conduct vis-a-vis that contract or one of the parties thereto is such that one may be deemed a third party beneficiary of the contract or otherwise held to be bound by the terms thereof, may be compelled to arbitrate a dispute arising out of or relating to the contract. *McBro Planning and Development Co. v. Triangle Electrical Construction Co., Inc.,* 741 F.2d 342 (11th Cir.1984); *Hughes Masonry Co., Inc. v. Greater Clark County School Building Corp.,* 659 F.2d 836 (7th Cir.1981); *A.L. Williams & Assoc., Inc. v. McMahon,* 697 F.Supp. 488 (N.D.Ga.1988). *See also Recold, S.A. de C.V. v. Montfort of Colorado, Inc.,* 893 F.2d 195 (8th Cir.1990); *L.F. Joseph Co., Inc. v. Michigan Sugar Co.,* 803 F.2d 396 (8th Cir.1986); *American Safety Equipment Corp. v. J.P. MaGuire & Co.,* 391 F.2d 821 (2nd Cir.1968). The district court's ultimate objective in reviewing a

motion to compel arbitration is to ascertain if an arbitrable dispute exists between individuals or entities who may be compelled to arbitrate. If arbitration is appropriate, it then is the arbitrator's responsibility to resolve the merits of the parties' contentions.

The district court must make several determinations in resolving the ultimate issue of arbitrability. For example, the court must determine that it has subject matter jurisdiction over the action independent of that which arises pursuant to the Act, that a valid, written agreement involving interstate commerce and containing an enforceable arbitration clause exists, that the parties named in the petition to compel arbitration are either parties to, or otherwise may be bound by, the terms of the contract, that the non-petitioning party has failed, neglected, or refused to arbitrate pursuant to a valid demand to do so, that the disputes between the parties are subject to arbitration, and, if raised as an affirmative defense by the non-petitioning party, that the petitioning party has not waived its right to compel arbitration. *See Genesco Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840 (2nd Cir.1987). *See also Martin Marietta Aluminum, Inc. v. General Electric Corp.,* 586 F.2d 143 (9th Cir.1978) (waiver issue determined by the court); *Hilti, Inc. v. Oldach,* 392 F.2d 368 (1st Cir.1968) (accord).

In this case, the court must resolve three issues in making a determination on the ultimate issue of arbitrability. First, may Altus and the Association, non-signatories to the Dunn/Shoreline contract, be bound by the arbitration clause contained in that contract? Second, if so, are the claims asserted against Dunn by Altus and the Association in Circuit Court subject to arbitration (*i.e.,* do they "aris[e] out of, or relat[e] to" the Dunn/Shoreline contract)? Finally, if the claims are arbitrable, has Dunn waived its right to compel arbitration? These issues will be addressed *seriatim.*

A. *Are Altus and the Association Bound By the Arbitration Clause Contained in the Dunn/Shoreline Contract?*

As noted, Altus and the Association are not signatories to the Dunn/Shoreline con-

tract. Also, as noted, in Circuit Court Altus and the Association asserted claims against Dunn as alleged third party beneficiaries of that contract. In an order dated October 20, 1987, however, the Circuit Court expressly determined that neither Altus nor the Association was a third party beneficiary of the contract. The only claims remaining against Dunn do not depend on the existence of privity of contract between Dunn and Altus, or Dunn and the Association.

Notwithstanding the foregoing, Dunn asserts that Altus and the Association may be compelled to arbitrate. Relying on the decisions in *McBro Planning and Development Co. v. Triangle Electrical Construction Co., Inc.,* 741 F.2d 342 (11th Cir.1984), *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.,* 659 F.2d 836 (7th Cir.1981), *Zac Smith & Co., Inc. v. Moonspinner Condominium Ass'n, Inc.,* 472 So.2d 1324 (Fla. 1st D.C.A.1985), *Sea Oats Condominium Ass'n v. Beaver Construction Co.* (CV 87–87 in the Circuit Court of Baldwin County, Alabama), and *Lee County Hospital Board v. McKinney Drilling Company, Inc.* (CV 82–131 in the Circuit Court of Lee County, Alabama), Dunn asserts that when an entity not a party to a contract containing an agreement to arbitrate either *claims* to be a beneficiary of that contract or claims rights arising out of such contract, that entity may be required to arbitrate its claims. Specifically, Dunn urges this court to conclude that Altus and the Association are bound by the arbitration provision contained in the Dunn/Shoreline contract, because each has contended in state court that it is a third party beneficiary of that contract and, furthermore, because their claims against Dunn are inextricably tied to Dunn's performance under the contract.

Dunn's argument presumes that this court need not make a conclusive determination as to Altus' or the Associations' status as a third party beneficiary of the Dunn/Shoreline contract. Rather, according to Dunn, Altus and the Association, simply by *claiming* in their amended complaints in intervention to be third party beneficiaries of that contract and by asserting claims which "arise out of" Dunn's performance thereunder, should be deemed to be bound by the arbitration provision contained therein.

In contrast, Altus and the Association maintain that they are neither parties to, nor third party beneficiaries of, the Dunn/Shoreline contract, and the mere fact that they sued Dunn in Circuit Court *claiming* to be third party beneficiaries is not sufficient to support a determination by this court that they should be bound by the arbitration provision. Altus asserts that this court should determine that Altus is not bound by the Dunn/Shoreline contract or, at least, conduct a hearing to determine if Altus is a third party beneficiary thereof or otherwise should be bound by it.

■ The court does not believe that the mere fact that Altus and the Association, at one time, claimed to be third party beneficiaries of the Dunn/Shoreline contract alone is sufficient to support a conclusion that those parties are subject to arbitration. The court does believe, however, that additional factors are present in this case which compel the conclusion that Altus and the Association should be equitably estopped from asserting that they are not bound by the arbitration claim contained in the contract.

The doctrine of equitable estoppel, as applied in the context of cases arising under the Federal Arbitration Act, has been adopted by the Eleventh Circuit Court of Appeals. In *McBro Planning and Development Co. v. Triangle Electrical Construction Co., Inc.,* 741 F.2d 342 (11th Cir. 1984), the petitioner, construction manager on a hospital renovation project, was sued in state court by respondent, the electrical contractor on the project. Although no written contract existed between petitioner and respondent, each had entered into separate written contracts with the project owner, which contracts contained arbitration clauses. Respondent's claims against petitioner were based on breach of contract (with respondent claiming to be a third party beneficiary of petitioner's contract with the project owner) and tort. Ultimately, respondent dropped the third party beneficiary claim.

Petitioner filed a petition in federal court seeking an order compelling arbitration of respondent's state court claims. Said order was granted, and respondent appealed. On appeal, the Eleventh Circuit affirmed the district court's order, concluding that the "close relationship of the ... entities involved ... and the close relationship of the alleged wrongs to [petitioner's] duties to perform as construction manager" estopped respondent from asserting the lack of a written agreement as a defense to arbitration. *McBro*, 741 F.2d at 343–44. Also relevant to the Court's conclusion was the fact that the claims asserted by respondent in state court were "'intimately founded in and intertwined with the underlying contract obligations.'" *Id.* at 344 (citation omitted).[3]

In reaching its decision, the Eleventh Circuit relied heavily on the Seventh Circuit Court of Appeal's decision in *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836 (7th Cir.1981), a case nearly factually indistinguishable from *McBro*. As in *McBro*, the *Hughes Masonry* Court's decision was based primarily on the nature of the claims asserted, those claims being intimately dependent on, and founded in, the underlying contract obligations, and on the general relationship of the parties to the dispute.[4]

Although the present case is factually distinguishable from *McBro* and *Hughes Masonry*, the court nonetheless believes that the reasoning of those cases is applicable. The relationship between Altus, the Association, and Dunn is such that Altus and the Association should be equitably estopped from asserting the lack of a written agreement as a defense to arbitration. Most significantly, all of the claims asserted by Altus and the Association are "intimately founded in and intertwined with the underlying contract obligations." *Hughes Masonry*, 659 F.2d at 841 n. 9.

Furthermore, both Altus and the Association have maintained in state court that they are third party beneficiaries of the Dunn/Shoreline contract. Although, as noted, the Circuit Court rejected Altus' and the Association's third party beneficiary contentions, this court nonetheless believes that the mere fact that Altus and the Association *claimed* to be third party beneficiaries, though not determinative of the issue, is relevant to the court's inquiry on the estoppel issue.

Also relevant to the court's inquiry is the fact that Altus occupied an intimate, perhaps even integral, position with respect to the Dunn/Shoreline relationship. Altus was the construction lender on Sugar Beach and a named obligee on the construction bond, which bond incorporated by reference the terms and conditions of the Dunn/Shoreline contract. Additionally, following foreclosure on Sugar Beach, Altus agreed to make and, in fact, made progress payments to Dunn to induce Dunn's continued performance under the Dunn/Shoreline contract.[5]

In light of the foregoing facts, the court concludes that the doctrine of equitable estoppel is appropriate in this case, and Altus and the Association therefore cannot argue that the absence of a written agreement precludes arbitration.[6] Altus and the

---

**3.** The Court also noted that respondent at one time claimed to be a third party beneficiary of the contract between petitioner and the project owner. *Id.* at 343. It is not clear to this court, to what extent, if any, the Court's ultimate determination of estoppel was based on that claim. The court does believe, however, that the fact that a party claims or has claimed to be a third party beneficiary of a contract containing an arbitration clause is one factor out of many which may be taken into consideration in determining whether the doctrine of equitable estoppel should apply against that party.

**4.** The court has not reviewed the *Sea Oats* or *Lee County* cases cited by petitioner. Although Dunn indicated in one of its post-argument briefs that it was providing the court with copies of those opinions, neither case is in the file.

The court notes, however, that neither decision is binding on this court and, at most, each might provide persuasive authority for Dunn's position. If this court were writing on a clean slate, those cases additionally might provide a possible framework of analysis for the court.

**5.** The court expressly declines to express an opinion as to whether Altus' actions effected a novation under the Dunn/Shoreline contract or resulted in the formation of a separate contract between Dunn and Altus.

**6.** Determining whether the doctrine of equitable estoppel should apply always presents a difficult question, the answer to which depends on the circumstances of each particular case. The fact that the inquiry is highly fact-based does not, in

Association thus may be compelled to arbitrate.[7]

### B. *Are the Claims Asserted By Altus and the Association Against Dunn in Circuit Court Arbitrable?*

Having determined that Altus and the Association are subject to arbitration, the court next must determine if the claims asserted by Altus and the Association are arbitrable. Presently pending against Dunn are Altus' and the Association's claims for negligence, and Altus' claim for fraud. The Circuit Court has determined that the negligence claims are of the type described in *Federal Mogul Corp. v. Universal Construction Co.*, 376 So.2d 716 (Ala.Civ.App.1979), and, consequently, do not depend on privity between Altus and Dunn, or the Association and Dunn.

■ As a preliminary matter, the court notes that claims need not be based on breach of contract to be arbitrable. *See McBro*, 741 F.2d at 344. *See also Prima Paint Corp. v. Flood & Conklin Mfg. Corp.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Thus, tort claims may be subject to arbitration, provided that those claims are deemed to fall within the scope of the language of the involved arbitration clause.

■ In this case, the arbitration clause requires arbitration of "all claims, disputes and other matters in question ... arising out of, or relating to, the Contract Documents or the breach thereof...." The language of the clause clearly encompasses claims such as those which currently are pending against Dunn. The negligence claims asserted by Altus and the Association are based on Dunn's performance under the Dunn/Shoreline contract and, to be proved, will require an inquiry into Dunn's obligations under the contract. Additionally, Altus' fraud claim against Dunn is manifestly related to Dunn's performance under the contract, since the essence of that claim is that Dunn submitted draw requests under the contract, which requests were fraudulent.

Altus' and the Association's claims arise out of and relate to performance under the Dunn/Shoreline contract and are "intimately founded in and intertwined with the underlying contract obligations." As such, the claims are subject to arbitration.

### C. *Has Dunn Waived Its Right to Compel Arbitration?*

■ Having determined that Altus and the Association may be compelled to arbitrate and that the claims asserted by Altus and the Association against Dunn are subject to arbitration, the court finally must determine whether Dunn has waived its right to compel arbitration. The burden is on Altus and the Association to prove waiver. *See Hilti v. Oldach*, 392 F.2d 368 (1st Cir.1968).

In support of their contention that Dunn has waived its right, respondents note that they initially became involved in the Circuit Court litigation in late 1986 and that it was not until mid–1990, nearly four years later, that Dunn filed its petition to compel arbitration. Respondents further emphasize that in the interim between filing suit and the filing of Dunn's petition, they engaged in extensive, costly discovery such that compelling arbitration at this late date would constitute a great detriment to them.

---

this court's opinion, *require* a jury determination of the issue. In fact, neither the *McBro* nor the *Hughes Masonry* courts held a jury trial on the issue. Where, as here, there are sufficient facts before the court which compel the conclusion that equitable estoppel should apply, a jury trial is unnecessary.

7. The court notes that the foregoing conclusion is supported by the federal policy favoring arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1984); *Seaboard Coast Line Ry. v. National Rail Passenger Corp.*, 554 F.2d 657 (5th Cir.1977).

The court also notes that in light of that conclusion, Altus' motion to dismiss clearly is due to be denied. The essence of Altus' motion is that Dunn's petition to compel arbitration is fatally defective because it fails to allege the existence of a written agreement, containing a valid and enforceable arbitration clause, between Dunn and Altus.

As noted, a written agreement is not the *sine qua non* of the Federal Arbitration Act. Moreover, Dunn's petition alleges sufficient facts to convey the bases upon which Dunn claims that Altus and the Association are subject to arbitration.

Dunn, however, notes that during the first two years of respondents' participation in the Circuit Court litigation Dunn maintained, *and the Circuit Court agreed,* that all of respondents claims against Dunn were barred by the earlier-noted pre-arbitration negotiations and settlement agreement between Dunn and Shoreline. Dunn, nevertheless during that period, expressly reserved its right to compel arbitration. Since there were no claims pending by Altus and the Association against Dunn at that time, there was no reason for Dunn to invoke its arbitration right.

Altus and the Association amended their complaints in intervention in mid–1988. It was not until March 1990 that the Circuit Court requested briefs on the viability of the claims asserted therein. In April 1990, Dunn filed a motion to dismiss the amended complaints, expressly reserving therein its right to compel arbitration. In an order dated April 27, 1990, the court declined to strike Altus' fraud claim, and in an order dated May 15, 1990, the court stated that it would allow the Association to maintain a negligence claim. The petition to compel arbitration was filed shortly thereafter.

The court concludes that Altus and the Association have failed to prove that Dunn has waived its arbitration rights. Dunn's petition was filed with this court within a reasonable time after Dunn became aware that it had a basis for compelling arbitration (*i.e.,* when the order allowing Altus' fraud claim against Dunn was issued). Moreover, from the beginning of Altus' and the Association's participation in the Circuit Court proceedings, Dunn consistently has reserved its right to compel arbitration.

## CONCLUSION

In light of the foregoing, the court concludes that Dunn's petition to compel arbitration is due to be, and hereby is, GRANTED, and Altus' motion to dismiss is due to be, and hereby is, DENIED. It is SO ORDERED.