**HERSMAN, INC., a Florida corporation, Don Hersman, an individual, and Frances Hersman, an individual, Plaintiffs,**

v.

**FLEMING COMPANIES, INC., an Oklahoma corporation, Defendant.**

No. CIV. A. 98–A–840–S.

United States District Court, M.D. Alabama, Southern Division.

Oct. 16, 1998.

Edward M. Price, J. Vincent Edge, Dothan, AL, for Plaintiffs.

Jarrod J. White, Donald J. Stewart, Mobile, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

This matter is before the court on a motion to compel arbitration and to dismiss the action or stay judicial proceedings, filed by Defendant Fleming Companies, Inc. For the reasons which follow, the motion to compel arbitration is due to be DENIED.

### I. FACTS

Plaintiffs Don and Frances Hersman are the sole shareholders of Hersman, Inc., which owns and operates a Piggly Wiggly supermarket in Bonifay, Florida. Defendant Fleming Companies, Inc. ("Fleming") is the wholesale supplier for Hersman. According to the plaintiffs, in September of 1996 representatives of Fleming suggested that the Hersmans consider building a new store and shopping center. When the Hersmans explained that they lacked sufficient knowledge or experience, Fleming representatives assured them that Fleming would provide its expertise and oversee the project. Specifically, the plaintiffs assert that Fleming agreed to manage the project, obtain a realtor to select land, take care of any problems with the land, and handle construction details.

On October 30, 1997, Don Hersman signed a contract on behalf of Hersman, Inc., secur-

ing the services of The Creative Group as architect for the development project. The standard form contract sets forth the basic services which the architect will provide, the owner's responsibilities toward the architect, and other provisions relating to the architect's services. On the last page of the contract, a typed provision states that Fleming will pay the total contract amount of $27,000. The signature of Keith Knight, a Fleming employee, appears just beneath that provision. Article Seven of the contract, entitled "Arbitration," contains the following section:

> 7.1. Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

On July 29, 1998, the plaintiffs filed a complaint against Fleming seeking compensatory and punitive damages. Count One alleges negligence or wantonness based on a failure to "exercise due care as concerns the oversight, supervision, advice, and guidance rendered to plaintiffs in connection with plaintiffs' shopping center project." In Count Two, the plaintiffs claim that Fleming willfully, mistakenly, or negligently made several misrepresentations inducing the plaintiffs to act to their detriment. Specifically, the plaintiffs claim that Fleming misrepresented its skill and expertise in such projects, the cost of the development project to the plaintiffs, the suitability of the land which the plaintiffs purchased, the resolution of environmental issues, and its role in project oversight. In Count Three, the plaintiffs contend that Fleming suppressed environmental problems with the land which substantially increased the costs of the project. Fleming now seeks an order compelling arbitration pursuant to the terms of the October 30, 1997 contract.

## II. DISCUSSION

Pursuant to the Federal Arbitration Act, a written arbitration "provision in any ... contract evidencing a transaction involving commerce ... [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to petition the court "for an order directing that such arbitration proceed." When a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

The plaintiffs do not dispute that the transactions at issue involve interstate commerce. They assert that their claims fall outside of the scope of the contractual arbitration provision. Arbitration is a matter of contract interpretation, and a party cannot be required to submit to arbitration any dispute absent an agreement to do so. *See AT & T Technologies Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). It is the court's task to determine whether an agreement to arbitrate exists between the parties, unless the parties have explicitly agreed otherwise. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Courts determining arbitrability must look to the intentions of the parties. *See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 475, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). When making such determinations, courts must keep in mind the strong federal policy in favor of arbitration agreements. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

This court first must decide whether the parties had an arbitration agreement. Fleming has produced a contract which contains a broad arbitration provision. In this contract the Hersmans secured the architectural services of The Creative Group for the supermarket project. Don Hersman signed the contract as owner on behalf of Hersman, Inc. Fleming is also a party to the contract.

The contract imposes a duty on Fleming to pay the total contract price for the architect's services, and Keith Knight, a Fleming employee, signed the contract.

Primarily, this standard form contract sets forth the duties of the owner and architect in relation to the architect's basic services. Disputes which would be subject to arbitration under this contract typically would include the architect. Fleming's only obligation under the contract is to pay the architect. Nevertheless, the arbitration provision applies to the "parties." Thus any disputes between Fleming and the Hersmans which arise out of or relate to this contract would be subject to arbitration.

The remaining issue is whether the plaintiffs' claims are within the scope of the arbitration agreement. Under the arbitration provision, "claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof shall be subject to and decided by arbitration." The Hersmans assert that the architectural services contract was merely incidental to the overall shopping center project, and its claims against Fleming have no relation whatsoever to that contract. Fleming responds that the architectural services contract establishes that Hersman owed certain duties concerning the land, and that the lawsuit seeks to shift responsibility for fulfilling those duties to Fleming.

It is well settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital,* 460 U.S. at 24–25, 103 S.Ct. 927. Agreements to arbitrate all disputes "arising out of or relating to" a contract have been described as broad. *See Prima Paint Corp. v. Flood & Conklin Mfg. Company,* 388 U.S. 395, 398, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). As noted above, however, a party cannot be required to submit to arbitration any dispute absent an agreement to do so. *See AT & T Technologies Inc. v. Communications Workers of America,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

The causes of action asserted in this lawsuit—negligence or wantonness, misrepresentation, and suppression—all sound in tort. Tort claims may be subject to contractual arbitration provisions. *See Gregory v. Electro–Mechanical Corp.,* 83 F.3d 382, 384 (11th Cir.1996). When determining whether claims are covered by an arbitration agreement, a court should look to the factual allegations in the complaint rather than the legal labels. *See id.* Several courts have elaborated on the necessary connection between tort claims and the arbitration agreement.[1]

The key element in determining whether tort claims are subject to an arbitration provision is the relationship between the claims asserted and the underlying contractual obligations. *See Gregory,* 83 F.3d at 384–85 (compelling arbitration of tort claims which depended on a buyer's "failure to fulfill its perceived obligations" in connection with a stock purchase agreement). Often the issue has arisen in the context of whether nonsignatories to an arbitration agreement were equitably estopped from avoiding arbitration because of the absence of a written agreement with the party seeking to compel arbitration. Several courts have compelled arbitration in such circumstances, finding that the plaintiffs' claims were "intimately

---

1. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.,* 141 F.3d 243, 250 (5th Cir.1998) (applying Texas law that a tort claim is arbitrable if it is so interwoven with the contract that it could not stand alone, but not arbitrable if it is completely independent of the contract and could be maintained without reference to the contract); *American Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 93 (4th Cir.1996) (subjecting all disputes that have a significant relationship to the contract to arbitration regardless of whether the claims implicate the terms of the contract); *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress International, Ltd.,* 1 F.3d 639, 643 (7th Cir.1993) (stating that claims which have their "genesis" in the agreement are arbitrable regardless of whether they raise issues of performance or interpretation); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2nd Cir.1987) (holding that claims must be arbitrated if allegations underlying those claims "touch matters" covered by a contract containing an arbitration provision); *McMahon v. RMS Electronics, Inc.,* 618 F.Supp. 189, 191 (S.D.N.Y. 1985) (requiring arbitration of tort claims based in substantial part on contractual rights and responsibilities).

founded in and intertwined with the underlying contract obligations." *McBro Planning & Develop. v. Triangle Elect. Const.*, 741 F.2d 342, 344 (11th Cir.1984) (quoting *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836, 841 n. 9 (7th Cir.1981)); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757–58 (11th Cir.1993); *Dunn Construction Company v. Sugar Beach Condominium Ass'n, Inc.*, 760. F.Supp. 1479, 1484 (S.D.Ala.1991). *But see Wilson v. Waverlee Homes, Inc.*, 954 F.Supp. 1530, 1536 (M.D.Ala.1997) ("What matters is that none of the duties the plaintiffs are claiming that Waverlee breached arose under and were assigned to it by the sales agreements ... which are the sole agreements governed by an arbitration clause here."); *Ex parte Isbell; Isbell v. Southern Energy Homes, Inc.*, 708 So.2d 571, 578 (Ala.1997).

Fleming cites *Dunn* as directly on point. In that case, Dunn Construction Company entered into a contract with Shoreline Developers to build a condominium complex (Sugar Beach Condominiums) on property owned by Shoreline. Altus Bank agreed to provide construction financing for the project and received a mortgage on Sugar Beach. Additionally, Altus was a named obligee on the construction bond which incorporated by reference the terms of the contract between Dunn and Shoreline. *See Dunn*, 760 F.Supp. at 1480.

Shoreline filed suit against Dunn, claiming that Dunn performed defective work which it failed to remedy. After Dunn completed construction, Altus provided approximately two million dollars to the Sugar Beach Condominium Association to effectuate necessary repairs to Sugar Beach. Altus and the Condominium Association intervened in Shoreline's action against Dunn. They asserted that Dunn's negligence caused the problems which had to be repaired. *See id.* at 1480–81. Altus added a fraud claim, contending that Dunn submitted fraudulent pay applications under its contract with Shoreline. *See id.* at 1481. Dunn settled with Shoreline and moved to compel arbitration with Altus and the Association based on an arbitration provision in its contract with Shoreline. *See id.*

The arbitration provision was nearly identical to the one in the present case.

After determining that Altus and the Association were equitably estopped from asserting the lack of a written agreement as a defense to arbitration, the court addressed whether the arbitration provision covered their tort claims. The court found that the negligence claims were "based on Dunn's performance under the Dunn/Shoreline contract and, to be proved, will require an inquiry into Dunn's obligations under the contract." *Id.* at 1485. Similarly, the fraud claim was "manifestly related to Dunn's performance under the contract." *Id.* Thus all tort claims asserted were subject to arbitration.

The relationship between the claims and the contractual obligations in the present case is far different from that in *Dunn.* Here, the contract which contains an arbitration provision imposes one obligation on Fleming—it must pay the $27,000 fee for basic architectural services. The claims concern various misrepresentations and a failure to exercise due care in connection with a multimillion dollar shopping center project. Fleming contends that the contract places certain duties on the plaintiffs concerning the land, and thus tort claims based on the quality of the land "arise out of" or "relate to" the contract.

The key inquiry in determining whether the tort claims are subject to the arbitration provision is the relationship between the plaintiffs' claims and the contractual obligations. The Hersmans do not appear to deny that this contract places duties on Hersman, Incorporated to provide the architect with certain services. Their claims, however, are not related to the division of duties in the architectural services contract.

The Hersmans have not alleged that Fleming failed to fulfill its obligation or that Fleming's status as a party to the architectural services contract gave rise to the duty to exercise due care. Instead, their claims depend on a finding that Fleming acquired a duty to exercise due care long before Hersman hired an architect and completely independent of the architectural services contract. There is no reference to this contract

in the complaint. The Hersmans' claims do not implicate the performance of Fleming's duties under the contract. The Hersmans need not inquire into the contract to prove their claims. The claims do not depend on the contractual relationship between Fleming and the Hersmans created in the architectural services contract. In short, the claims exist wholly apart from the contract.

Certainly Fleming may rely on the contract as evidence of its limited involvement in the shopping center project. But it cannot force the Hersmans to arbitrate claims which are not related to the contract solely because that contract happens to include an arbitration clause. The language of the arbitration clause must encompass those claims. Even in light of the federal policy favoring arbitration, this court cannot find that the Hersmans intended to arbitrate the tort claims which they have asserted against Fleming by signing the architectural services contract. The mere existence of an arbitration agreement between the parties is insufficient to compel arbitration of these claims.

### III. CONCLUSION

For the reasons stated above, defendants' Motion to Compel Arbitration and to Dismiss Action or Stay is due to be and is hereby DENIED.