**ARMADA COAL EXPORT, INC., Plaintiff-Appellant,**

v.

**INTERBULK, LTD., Defendant-Appellee.**

**No. 83–7007.**

United States Court of Appeals, Eleventh Circuit.

March 16, 1984.

G. Hamp Uzzelle, III, Mobile, Ala., for plaintiff-appellant.

Sidney H. Schell, Mobile, Ala., for defendant-appellee.

Before GODBOLD, Chief Judge, RONEY and SMITH *, Circuit Judges.

EDWARD S. SMITH, Circuit Judge:

Plaintiff-appellant Armada Coal Export, Inc. (Armada), appeals here from the United States District Court for the Southern District of Alabama, which granted a motion by defendant-appellee, Interbulk, Ltd. (Interbulk), for stay, pending arbitration. We reverse the district court's granting of the stay and, finding that jurisdiction properly lies in that court, remand for further proceedings.

### Background

This suit, concerning whether certain tort claims are subject to pending arbitration proceedings, arises out of an earlier suit for breach of a charter party agreement between Interbulk, a Liberian corporation and owner of the M/V BON TRADER, and Armada, a Texas corporation and charterer. Pursuant to the charter party Interbulk presented the M/V BON TRADER at the port of Mobile, Alabama, for loading of coal, but Armada did not timely load the ship, resulting in large demurrage charges for Interbulk. Interbulk sued to recover these charges in the district court, but eventually dismissed its own suit in favor of proceeding with arbitration in New York.

When Interbulk sued, however, it believed that Armada was not present in the southern district of Alabama. Interbulk therefore requested and the district court issued a writ of foreign attachment under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Pursuant to the writ, Armada's coal, which was in warehouse ashore, was attached on December 23, 1981. On December 28 Armada deposited $750,000 cash with the clerk of court, obtained release of the coal, and subsequently obtained release of the cash upon delivering to Interbulk a letter of credit for $550,000 as substitute security for the coal. Thereafter Armada moved to quash the writ of foreign attachment on the ground that at all material times Armada could indeed have been found in the district. On May 12, 1982, the district court entered an order granting the motion to quash, but Interbulk refused to return to Armada the letter of credit. Armada filed a motion to compel its return, which the court granted on June 24, but Interbulk still refused to return the letter. Consequently, on July 7, 1982, Armada filed in Alabama state court seeking to recover from Interbulk damages for wrongful and unlawful attachment of Armada's coal and for conversion of Armada's letter of credit. Interbulk removed the action to the district court, asserting admiralty and maritime jurisdiction, and moved to stay Armada's tort suit pending arbitration. When the district court granted the stay on December 17, 1982, Armada appealed here.

### Opinion

#### A.

Armada contends that the district court erred in granting the motion for stay pending arbitration, since the causes of ac-

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

tion at issue, wrongful attachment and conversion, are outside the scope of the charter party. Interbulk contends the opposite. The pertinent clause of the charter party concerning what is arbitrable is admitted by both parties to be broad; it states that "[a]ny dispute arising during the execution of the Charter Party shall be settled by arbitration."

More specifically, Armada emphasizes that its two claims are legitimate tort claims arising from an unlawfully issued writ of foreign attachment—a procedural issue wholly apart from the charter party, unforeseen by the parties as a matter intended for the arbitration forum, and better handled by judges skilled in such issues than by arbitrators trained to resolve contract disputes. *Fuller v. Guthrie,* 565 F.2d 259 (2d Cir.1977); *Old Dutch Farms, Inc. v. Milk Drivers & Dairy Employees Local Union No. 584,* 359 F.2d 598 (2d Cir.), *cert. denied,* 385 U.S. 832, 87 S.Ct. 71, 17 L.Ed.2d 67 (1966). Interbulk counters by stressing the broad language of the arbitration clause —"any" dispute arising during the "execution" of the charter party—as encompassing a dispute arising from Interbulk's initial attempt to recover demurrage charges it asserts Armada properly owes under the charter party. *Cf. Texaco, Inc. v. American Trading Transportation Co.,* 644 F.2d 1152 (5th Cir.1981).

The authorities and Armada's arguments persuade us that Armada's claims for wrongful attachment and conversion are, indeed, proper issues for the judiciary rather than matters intended, under the terms of the charter party, for arbitration. While certainly there is a connection between Armada's claims and the charter party relationship between Armada and Interbulk— *i.e.,* but for the two parties having entered into this business arrangement which was imperfectly performed, there would have been no wrongful attachment and conversion—such connection is not sufficiently close to constitute a dispute arising during the execution, or performance, of the charter party itself. In *Texaco, supra,* this court's predecessor concluded the same, despite an extremely broad arbitration clause, where the suit concerned a delictual claim

for damages to Texaco's dock. Likewise, in *Fuller* the court concluded that a concert promoter's slander claim against folksinger Arlo Guthrie for a comment Guthrie made during the concert did not fall within the contract's broad arbitration clause. *See also Old Dutch Farms, supra,* concerning employer's tort claims against union for unlawful secondary activity. Finally, we note that Interbulk has twice disobeyed the district court's orders (of May 12 and June 24, 1982) to quash the writ of foreign attachment and return the letter of credit. While Armada chose not to pursue contempt proceedings against Interbulk and instead filed tort claims, this aspect of this case underscores the appropriateness of leaving it within the judicial forum. We therefore reverse the district court's grant of the stay and remand Armada's claims to that court for further proceedings.

**B.**

■ Armada raises for the first time the issue of the district court's jurisdiction over this case. Armada cites Interbulk's petition for removal from the Alabama state court to the district court, which petition states as an exclusive basis for removal that the matter falls within the admiralty and maritime jurisdiction under Rule 9(h) of the Federal Rules of Civil Procedure. Under the "saving to suitors" clause Armada contends that such removal is incorrect. 28 U.S.C. § 1333 (1976); *Poirrier v. Nicklos Drilling Co.,* 648 F.2d 1063, 1065 (5th Cir.1981). We need not address this issue, however, because federal diversity jurisdiction, while imperfectly pled, is apparent from the face of the removal petition, which states in the first paragraph that defendant Interbulk is "a corporation organized and existing under the laws of a State of the United States other than the State of Alabama," and requests in the last paragraph that the district court assume "full jurisdiction of the cause herein as provided by law." We therefore reject Armada's request that we remand the case to the state court for jury trial and instead remand the case to the district court with instructions to grant Interbulk leave to amend its removal petition to state unequivocally that diversity of citi-

zenship is the basis for that court's jurisdiction. *D.J. McDuffie, Inc. v. Old Reliable Fire Insurance Co.,* 608 F.2d 145 (5th Cir. 1979), *cert. denied,* 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980).

The district court's granting of a stay pending arbitration is reversed, and the case is remanded to that court for further proceedings, with instructions that leave be granted for Interbulk to amend its removal petition to state clearly that diversity of citizenship is the basis for the district court's jurisdiction.

REVERSED and REMANDED.