549 So.2d 215 (1989)
HUSSMANN CORPORATION, Appellant,
v.
UPS TRUCK LEASING, INC., Appellee.
No. 88-1937.
District Court of Appeal of Florida, Fifth District.
August 31, 1989.
Rehearings Denied September 29, 1989.
*216 Gwynne A. Young and Amy S. Farrior, of Carlton, Fields, Ward, Emmanuel, Smith, Cutler, P.A., Tampa, for appellant.
Christopher C. Skambis, James S. Grodin and Sherry L. Metcalfe, of Foley & Lardner, Van Den Berg, Gay, Burke, Wilson & Arkin, Orlando, for appellee.
SHARP, Judge.
Hussmann Corporation (the lessee of a truck) appeals from a summary judgment holding it liable to UPS Truck Leasing, Inc. (the owner and lessor of the truck), for the value of the truck which was stolen while in Hussmann's possession. The record establishes no basis to conclude that Hussmann was negligent or that it was at fault for causing or contributing to the loss of the truck. The trial court premised Hussmann's liability on an interpretation of the rental contract. We find no basis amongst the contradictory provisions of the rental contract, to place the risk of loss by theft on the lessee, Hussmann. Accordingly, we reverse.
Hussmann leased a $34,000.00 truck from UPS for one week at the "card rate" (or lowest rental) because it did not elect to have UPS provide liability and collision insurance for an increased daily or weekly charge. The paragraphs concerning collision insurance on the first page of the contract are clear and unambiguous. They are set forth in bold type and boxed for easy reading:
COLLISION DAMAGE "LIMITATION"
Customer by initialling below and paying additional fees, limits vehicle indemnity to UPS for collision to $5,000 per tractor and $2,000 per truck. For exception, see reverse side.
Accept: Decline:
* * * * * *
WARNING
RENTER IS RESPONSIBLE FOR ALL OVERHEAD DAMAGE AND CERTAIN OTHER DAMAGE UNDER ANY CIRCUMSTANCES.
* * * * * *
IT IS AGREED THAT IN THE EVENT THIS VEHICLE IS DAMAGED THAT LESSEE WILL PAY THE RENTAL CHARGES ON THE VEHICLE UNTIL THE DAMAGE HAS BEEN REPAIRED TO LESSOR'S SATISFACTION AND THE VEHICLE RETURNED TO LESSOR.
At the top of page one, Hussmann initialed its election to provide both collision and liability insurance for the vehicle.
The confusion commences, however, when one turns to the fine print on the reverse side of the rental agreement. Gone are the boxes and bold type for important information. There are two columns of fine print. At the top of the second column it provides:
CUSTOMER AGREES TO INDEMNIFY, DEFEND AND HOLD HARMLESS UPS FROM AND AGAINST:
Any and all claims, suits, losses, liabilities, fines, penalties, and expenses (including legal expenses and attorney fees) caused by or arising out of:
(1) Any injury to or death of person(s) or damage to property... . [N.A.]
(2) any injury or damage sustained by any occupant of the vehicle... . [N.A.]
(3) Customer's violation of any terms of this agreement... . [N.A.]
(4) Loss or damage to the vehicle regardless of fault, but customer's responsibility is limited to $5,000 for a straight truck... . If customer has accepted the collision damage limitation and paid the additional fee, customer's responsibility for collision only is limited to $2,000 for a straight truck... . However, customer shall be fully liable and responsible if the vehicle is used or driven in violation of the terms of this agreement, or is damaged or destroyed resulting from colliding with any overhead or structural object because of insufficient clearance whether height or width.

*217 (5) Loss or damage to the vehicle regardless of fault if customer provides collision insurance.
(6) Repossessing a vehicle... . [N.A.].
(7) The theft or mysterious disappearance of tires, tools and accessories from the vehicle; operation of the vehicle during a labor dispute; forfeitures or seizures resulting from the use of the vehicle.
In an effort to breathe clear meaning into these miscellaneous and contradictory provisions regarding collision insurance, the trial court adopted UPS' interpretation, which was set forth in the affidavit of Todd Berger (a UPS supervisor). There are three possibilities regarding collision insurance. First: if the customer pays $20.00 more per day than the card rate, UPS provides collision and liability insurance for the truck, subject to a $5,000 deductible. The customer thereby limits its liability to $5,000. Second: if the customer pays the card rate plus $30.00 per day, UPS provides collision and liability insurance for the truck, subject to a $2,000 deductible. The customer then limits its liability to $2,000. But if the customer elects to provide its own liability and collision insurance, as in this case, there is no applicable limitation of liability for loss of the truck.
In our view, the fine print provisions regarding limiting a customer's liability to $5,000 or $2,000 or no limitation at all, are confusing and ambiguous. We can see no basis for Todd Berger's interpretation that the $5,000 or $2,000 limitation, depend upon a $20.00 or $30.00 per day charge. Neither the page one data nor the page two fine print say that.
Further, the fine print on page two's paragraphs (4) and (5) both appear reasonably applicable if the customer elects to provide its own collision insurance. Where provisions of a contract of adhesion[1] (as this one clearly is) are contradictory, the agreement should be strictly construed against the drafter of the document  here, UPS.[2] If nothing else at least Hussmann is entitled to claim the $5,000 collision damage limitation of liability.
However, more basically, this rental agreement does not expressly deal with shifting the risk of loss for theft of a vehicle from the bailor (UPS) to the bailee (Hussmann). Florida agrees with the weight of authority that a bailee is not an insurer of the bailed goods and if the bailee is not negligent or at fault, the risk of loss by theft is on the bailor.[3] In order to shift this basic risk which all bailors shoulder, the rental contract should clearly and unambiguously put a renter on notice that a fundamental reshuffling of risks is afoot. That did not happen in this document.
Language used in business documents such as this one should be interpreted as reasonable persons, knowledgeable about the business or industry, would likely interpret them[4]  not some strained interpretation put forth by the drafter. Berger claims the renter's election or nonelection to provide its own collision insurance is key to the renter's liability for theft.
However, theft insurance is generally one aspect of comprehensive insurance, and comprehensive insurance almost always (but not necessarily) excludes collision insurance.[5] In any event, collision insurance *218 does not include loss by theft or other risks which are included in comprehensive insurance.[6]
Significantly, there are no elections or provisions in this rental agreement for either UPS or the customer to carry or provide comprehensive insurance for the vehicle. The lessee was given no option to provide or have UPS provide the kind of insurance which would have given coverage for loss of the vehicle from theft. Whether Hussmann allowed UPS to provide collision insurance at an increased charge has absolutely nothing to do with whether either party was covered for loss by theft.
Thus, connecting the renter's liability for theft loss to its selection of options regarding collision insurance makes no logical sense. It is a classic case of apples and oranges. At best the contract is ambiguous on theft loss, and should be construed against UPS.[7]
We conclude that this rental agreement does not deal with shifting any risk of loss for theft of the rental vehicle from one party to the other. Only in paragraph 7 of the page 2 fine print is loss by theft mentioned. But that is limited to tires, tools and accessories. Since the agreement specifically covered theft of parts or attachments, by not mentioning theft of the whole vehicle, the logical conclusion follows that the risk of loss of the vehicle by theft remained with the bailor, UPS.[8]
REVERSED and REMANDED.
GOSHORN, J., concurs.
COWART, J., dissents without opinion.
NOTES
[1] See Elliott Leases Cars, Inc. v. Quigley, 118 R.I. 321, 373 A.2d 810 (1977).
[2] Elliott. Cf. Hartnett v. South Ins. Co., 181 So.2d 524 (Fla. 1965); National Merchandise v. United Services Auto Assn., 400 So.2d 526 (Fla. 1st DCA 1981).
[3] Fla.Jur.2d Bailments § 10 (1978); Peacock Motor Co. of Marianna v. Eubanks, 145 So.2d 498 (Fla. 1st DCA 1962); Fruehauf Corporation v. Aetna Ins. Co., 336 So.2d 457 (Fla. 1st DCA 1976); City of Clearwater v. Thomas, 446 So.2d 1160 (Fla. 2d DCA 1984).
[4] See Biltmore Systems, Inc. v. Mai Kai, Inc., 413 So.2d 458 (Fla. 4th DCA 1982); National Merchandise Co., Inc. v. United Service Auto Assoc., 400 So.2d 526 (Fla. 1st DCA 1981).
[5] 10A Couch on Insurance § 42.315 (1982); 4 Appleman Insurance Law & Practice, § 2102 (1969); 5 Appleman Insurance Law & Practice § 3222 (1970); Hartnett v. South Ins. Co., 181 So.2d 524, 528, n. 3 (Fla. 1965).
[6] 10A Couch on Insurance § 42:206. The "dictionary meaning" of collision insurance is the striking together or against one another; contact between two moving bodies or one moving and one stationary. The "popular meaning" is "contact with another object." Id., § 42:207. Theft insurance covers stealing, larceny, pilferage (Id., § 42:262) and/or willful taking or appropriation (Id., § 42:263).
[7] Harbor One, Inc. v. Preston, 172 So.2d 478 (Fla. 3d DCA 1965). Cf. National Merchandise v. United Service Auto Assn., 400 So.2d 526 (Fla. 1st DCA 1981).
[8] Thus, expressio unius est exclusio alterius (The expression of one thing is the exclusion of another); or more accurately enumeratio unius est exclusio alterius (The specification of one thing is an exclusion of another).