**Mary K. BULLARD, Plaintiff,**

v.

**CAPITAL ONE, F.S.B., Defendant.**

**No. 4:03cv215–RH.**

United States District Court,
N.D. Florida,
Tallahassee Division.

Sept. 17, 2003.

EC Deeno Kitchen, Kitchen, Judkins, Simpson, etc., Tallahassee, FL, for Mary K Bullard, individually and as attorney-in-fact for Sarah Jane Briscoe.

Michael Robert Cavendish, William Curtis Caywood, IV, McGuire, Woods, Battle, etc.—Jacksonville, FL, Jacksonville, FL, for Capital One F.S.B.

## ORDER ON MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

HINKLE, District Judge.

This is a dispute over money that Defendant Capital One, F.S.B., allegedly improperly paid out of Plaintiff Mary K. Bullard's money market account.[1] Ms. Bullard alleges breach of contract, conversion, negligence, and civil theft, and she has sued Capital One for return of the money and

---

1. Mary K. Bullard filed the claim individually and as attorney-in-fact for her disabled sister, Sarah Jane Briscoe.

punitive damages. In separate pleadings, Capital One has moved to dismiss this action and to compel arbitration and stay this action pending arbitration. I grant the motion to compel arbitration and stay the proceedings because the underlying claims are governed by a contractual arbitration clause.

## I

### Background

In October 2000, Ms. Bullard opened a Money Market Account on behalf of her sister with Capital One. The Money Market Account was governed by a Money Market Account Agreement. The Agreement mandated arbitration of "any legal claim between you and us ('Claim') regarding your account." [2]

Ms. Bullard alleges that in March 2002, Capital One paid a total of $150,000.00 from her account due to two forged checks that the FBI has since attributed to a Nigerian fraudulent check scheme. Ms. Bullard states that upon receipt of her bank statement, she noticed the unauthorized withdrawals and notified Capital One of the problem. In June 2002, Ms. Bullard closed her Capital One account. Despite repeated demands by Ms. Bullard, Capital One has yet to reimburse her for the $150,000. Ms. Bullard further alleges that Capital One has actually recovered some or all of the money wrongfully taken out of her account and has not returned any of that money to her.

On June 9, 2003, Ms. Bullard filed this action against Capital One in Florida state court claiming that Capital One's payment of the forged checks and subsequent failure to reimburse Ms. Bullard constituted a breach of contract (count I); [3] that Capital One converted Ms. Bullard's funds to its own use (count II); that Capital One, in paying the forged checks, negligently breached its duty to safeguard Ms. Bullard's funds (count III); and that Capital One committed civil theft in violation of state law (count IV).[4] Capital One removed the action to this court based on diversity of citizenship. *See* 28 U.S.C. §§ 1332 & 1441.

Capital One has moved to compel arbitration and to stay this action pending arbitration. Ms. Bullard argues that arbitration is not warranted because the tort and civil theft claims are beyond the scope of the contract's arbitration clause and because she did not agree to arbitrate the tort and civil theft claims.

## II

### Applicable Law

Because the Agreement involves interstate commerce and contains an arbitra-

---

2. The arbitration clause provided:
   Any legal claim between you and us ("Claim") regarding your account shall, at your or our request, be resolved by an arbitrator to be mutually agreed upon by the parties. A party who has asserted a Claim in a lawsuit in court may elect arbitration with respect to any Claim(s) subsequently asserted in that lawsuit by any other party or parties. IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PAR-

TICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. NOTE THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.
Document 1, Ex. A (at Complaint Ex. B) (emphasis in original).

3. *See* §§ 673.4011 & 674.401, Fla. Stat. (2002).

4. *See* §§ 772.11 & 812.014(1), Fla. Stat. (2002).

tion clause, the Federal Arbitration Act ("FAA") applies and the case is governed by federal law.[5] If the Agreement's arbitration clause covers the claims in this action, then arbitration is mandated. *See, e.g., Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original). When arbitration is compelled, a district court must also stay the proceedings pending arbitration. *See* 9 U.S.C. § 3.

## III

### The Arbitration Clause

■■■ Only those claims within the scope of an arbitration agreement are subject to arbitration. *See Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. Medpartners, Inc.,* 312 F.3d 1349, 1357 (11th Cir.2002) ("[W]e will compel no arbitration of issues that are outside an agreement to arbitrate."). Under the Federal Arbitration Act, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration .... " *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983))) (emphasis omitted).

■ The language in this case, allowing arbitration of "any legal claim ... regarding your account," is broad. Using ordinary English and contract interpretation principles, I read this clause as a very broad grant, encompassing all actions relating to, deriving from, and under the account or Agreement governing the account. The agreement does not limit the scope of arbitration in any way; arbitration is not restricted to breach of contract claims or any other class of claim. *See, e.g., H.S. Gregory, G.E. v. Electro–Mech. Corp.,* 83 F.3d 382, 384 (11th Cir.1996) ("The law is clear that tort claims and claims other than breach of contract are not automatically excluded from a contractual arbitration clause.") (citing *Mitsubishi Motors* ). Rather, the arbitration clause broadly states, *"any* legal claim" (emphasis added). This language, then, includes arbitration of contract, tort, and civil theft claims, as well as any other "legal claim" between Ms. Bullard and Capital One regarding Ms. Bullard's account.

Ms. Bullard also argues that "regarding your account" does not necessarily foreclose court access for her tort and civil theft claims because the claims are founded on separately identifiable money that was never in the account, and that therefore is not "regarding" the account. However, the claims are clearly "regarding" money that was taken out of her account to pay the forged checks and never returned. These claims derive from alleged improper payment of money that was *in the account.* The tort claims here "regard" the account and implicate the Agree-

---

**5.** Despite Plaintiff's citation to some Florida case law, Florida state law does not govern. Because the assessment of the scope of the arbitration clause is governed by the Federal Arbitration Act, federal law applies. *See* 9 U.S.C. § 1 *et seq.* Florida law might apply were the formation of the contract at issue. However, despite Ms. Bullard's assertion of

her lack of intent to waive court access for tort claims, discussed in more detail *infra,* the arbitration clause itself and the Agreement as a whole clearly state that the arbitration clause applies to the whole Agreement. Ms. Bullard, by continuing to use the services Capital One offered, accepted the broad arbitration clause.

ment. Therefore, despite Ms. Bullard's attempts to separate the claims from the account, the facts are that the claims "regard" the account. *See, e.g., Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.,* 1 F.3d 639, 643 (7th Cir. 1993) ("a party may not avoid a contractual arbitration clause merely by casting its complaint in tort"); *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 846 (2d Cir.1987) ("If the allegations underlying the claims 'touch matters' covered by the [Agreement], then those claims must be arbitrated, whatever the legal labels attached to them."). This conclusion is made even more compelling by the canon of construction favoring the proponent of arbitration. *See, e.g., AT & T Tech., Inc. v. Communications Workers of Am., Inc.,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Ms. Bullard argues that *Hersman, Inc. v. Fleming Companies,* 19 F.Supp.2d 1282 (M.D.Ala.1998), supports her contention that her tort and civil theft claims are outside the scope of the contractual arbitration clause. The court in *Hersman* did not find sufficient nexus to compel arbitration of those claims because the parties' architectural services contract with the arbitration clause was unrelated to the claims in that case. *Id.* at 1286. Perhaps more instructive, however, is the court's statement that, "[t]he key element in determining whether tort claims are subject to an arbitration provision is the relationship between the claims asserted and the underlying contractual obligations." *Id.* at 1285. As discussed above, Ms. Bullard's claims are strongly related to Capital One's underlying contractual obligations.[6] The parties' relationship and contract governed Ms. Bullard's money market ac-

count, and Ms. Bullard's tort and civil theft claims arising from the forged checks are "regarding" Ms. Bullard's money market account. Ms. Bullard's claims fall within the scope of the arbitration agreement.

■ An arbitration clause covers only the claims the parties intended it to cover. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (requiring court to focus on arbitration clause to determine whether there is an agreement to arbitrate underlying dispute). Ms. Bullard argues that she did not intend to sign away her rights to court access for tort and civil theft claims. However, the contract as a whole, including the broad arbitration clause, indicates the parties' express agreement to arbitrate these claims. *AT & T Tech., Inc. v. Communications Workers of Am., Inc.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (" '[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail' ") (alteration in original) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1353–54, 4 L.Ed.2d 1409 (1960)).

In *Brown v. ITT Consumer Financial Corp.,* 211 F.3d 1217 (11th Cir.2000), the Eleventh Circuit held that *Brown's* broad arbitration clause must be honored. *See id.* at 1221 ("A party cannot avoid arbitration ... [merely] because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim."). *Brown* continued, "The language of the clause at issue is brief, unequivocal and all-encompassing. It states that 'any

---

6. As Ms. Bullard notes, a Florida court has held that a wrongful death tort claim was not covered by a broad arbitration clause. *See Seifert v. U.S. Home Corp.,* 750 So.2d 633

(Fla.1999). However, the relationship between the agreement and claim in *Seifert* was significantly weaker than in the case at bar.

dispute between them or claim by either against the other' is subject to arbitration." *Id.; Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 700 (11th Cir. 1992) (same); *see also Paladino v. Avnet Computer Tech., Inc.,* 134 F.3d 1054, 1057 (11th Cir.1998) ("The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement.") (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

As in *Brown,* the Agreement in this case included a "brief, unequivocal, and all-encompassing" arbitration clause: "[a]ny legal claim between you and us ('Claim') regarding your account shall, at your or our request, be resolved by an arbitrator ...." The arbitration clause refers to the whole contract, and the claims asserted here fall within the arbitration provision. Additionally, the Agreement contains a section entitled "Notification of Errors, Forgeries and Unauthorized Signatures." Because the Agreement outlines procedures to address suspected forgeries, the Agreement and its arbitration clause specifically, as well as generally, cover claims stemming from forgeries. Despite Ms. Bullard's assertions, the Agreement specifically *includes,* rather than *excludes,* these claims in the arbitration clause.[7]

Ms. Bullard cites cases where courts found that the parties did not agree to arbitration. *Armada Coal Export, Inc. v. Interbulk, Ltd.,* 726 F.2d 1566, (11th Cir. 1984), involved a clause providing for arbitration of "any" dispute arising during the "execution" of a charter party. *Id.* at 1567–68. The Eleventh Circuit found that the plaintiff's claims for wrongful attachment and conversion arising from the defendant's lack of compliance with a previously issued court order to quash an attachment was insufficient to force arbitration. *Id.* at 1568. The Eleventh Circuit acknowledged the "extremely broad" arbitration clause but nevertheless refused to compel arbitration because the connection between the parties and the dispute was not "sufficiently close to constitute a dispute arising during the execution, or performance, of the charter party itself." *Id.; see also Texaco, Inc. v. Am. Trading Transp. Co.,* 644 F.2d 1152, 1154 (5th Cir. 1981) (refusing to compel arbitration because "[t]he Charter could have provided for arbitration of all disputes between the parties involving the chartered vessel. Instead the parties chose the more restrictive language limiting arbitration to disputes or differences arising out of the Charter"). However, the arbitration provisions in *Armada Coal* and *Texaco* were more limited than in the case at bar. Because the agreement to arbitrate is broad, and because Ms. Bullard has offered no evidence of an intent to exclude these claims from arbitration, I conclude that the parties intended to arbitrate these claims.

### Conclusion

For these reasons,

IT IS ORDERED:

Defendant's motion to compel arbitration and to stay proceedings (document 3) is GRANTED. All proceedings in this action are stayed pending arbitration. By

---

**7.** Plaintiff argues that because this is an adhesion contract, it must be construed strictly against the drafter. The nature of the contract would matter more if the contract were unclear. *See, e.g., Hussmann Corp. v. UPS Truck Leasing, Inc.,* 549 So.2d 215 (Fla. 5th DCA 1989) (truck rental agreement with contradictory provisions must be construed against drafter). However, because the parties' agreement to arbitrate these claims is broad and unambiguous, whether this is an adhesion contract is irrelevant.

not later than the last day of each February and August, beginning with February 29, 2004, the parties shall file a joint status report, setting forth the status of arbitration proceedings. Any such report may be filed by one party with the consent of the other party.