Rel: May 23, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

———————————————

## CL-2024-0792

———————————————

## West Alabama Bank and Trust

## v.

## Perry County Board of Education

## Appeal from Perry Circuit Court
## (CV-24-900004)

EDWARDS, Judge.

In February 2024, the Perry County Board of Education ("the PCBOE") filed a complaint in the Perry Circuit Court ("the trial court") seeking $26,000 in damages from West Alabama Bank and Trust ("the bank") based on the bank's alleged negligence in honoring two fraudulent

checks drawn on the PCBOE's bank account with the bank. In April 2024, the bank answered the complaint and asserted a counterclaim against the PCBOE for breach of the account agreement based on the PCBOE's alleged failure to properly examine its statement and to report to the bank the unauthorized checks within the 60 days required by the account agreement; the bank attached to its answer and counterclaim a copy of the account agreement, a copy of the two allegedly fraudulent checks, and a copy of the July 2023 bank statement for the PCBOE's account with the bank. In the counterclaim's prayer for relief, the bank sought only an award of attorney fees, the court costs, and the expenses associated with defending the PCBOE's action.

In April 2024, the bank served on the PCBOE requests for admission. In May 2024, the PCBOE filed a reply to the counterclaim that it amended on July 1, 2024, to contend that the account agreement was void for a lack of consideration and a lack of mutuality, was unconscionable, and was against public policy. On July 2, 2024, the PCBOE responded to the bank's requests for admission. On July 15, 2024, the bank filed requests for production and indicated its intent to notice the depositions of two persons. On July 24, 2024, the trial court

2

set the case for a trial to take place in December 2024, set out a scheduling order, and referred the parties to mediation. On July 30, 2024, the PCBOE amended its complaint to add claims of money had and received and of conversion.

On August 20, 2024, the bank filed a motion to compel arbitration of the parties' dispute based on various arbitration agreements that had been executed by representatives of the PCBOE.[1] In its motion to compel arbitration, the bank set out the procedural history of the action, stated that it had propounded 15 requests for admission, and explained that, although it had noticed two depositions with accompanying requests for production, those depositions had been canceled when the PCBOE amended its complaint in July 2024. To support its motion to compel arbitration, the bank attached the account agreement; various arbitration agreements that had been signed by representatives of the PCBOE over several years, including, most recently, in 2022; an affidavit of the president of the bank, Andrew C. Wade, Jr.; and certain bank statements, including canceled checks, that, based on Wade's affidavit

---

[1]Each of the several arbitration agreements were separate documents from the account agreement.

testimony, indicated that the PCBOE had engaged in interstate commerce by using the bank account to pay money to certain persons or entities in other states, including Georgia, California, Illinois, Indiana, Louisiana, Maryland, Massachusetts, New York, Virginia, Tennessee, and Texas. The PCBOE opposed the motion to compel arbitration, arguing that the parties had not entered into a valid contract, that the motion to compel arbitration had not been timely filed, that the action involved tort claims, and that "[the bank's] documents in their entirety are overly broad and unconscionable."

On October 8, 2024, the trial court entered an order denying the bank's motion to compel arbitration without stating its rationale. The bank filed a notice of appeal. See Rule 4(d), Ala. R. App. P. (providing, in pertinent part, that "[a]n order granting or denying a motion to compel arbitration is appealable as a matter of right, and any appeal from such an order must be taken within 42 days (6 weeks) of the date of the entry of the order"). On the bank's motion, the trial court stayed the proceeding pending resolution of the bank's appeal.

On appeal, the bank argues that the trial court erred by denying its motion to compel arbitration. The bank contends that the arbitration

4

agreements are valid, that the PCBOE has engaged in interstate commerce through the use of its bank account with the bank, and that the bank's actions during the litigation were not sufficient to have waived its intent to arbitrate.  We agree.

> "In reviewing a trial court's refusal to compel arbitration, [the appellate court's] review is de novo. … [A] trial court's ruling on a question of law is not within the trial court's discretionary function; therefore, rulings on these motions are subject to de novo review. A de novo review is a review without any assumption of correctness."

Kenworth of Dothan, Inc. v. Bruner-Wells Trucking, Inc., 745 So. 2d 271, 273 (Ala. 1999).

> "'[An appellate court] reviews de novo the denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So. 2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So. 2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction affecting interstate commerce. Id.  "[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Automotive, Inc. v. Beavers, 674 So. 2d 1260, 1265 n.1 (Ala. 1995) (opinion on application for rehearing).'"

Elizabeth Homes, L.L.C. v. Gantt, 882 So. 2d 313, 315 (Ala. 2003) (quoting Fleetwood Enters., Inc. v. Bruno, 784 So. 2d 277, 280 (Ala.

5

2000)). "'If the party opposing arbitration presents sufficient evidence to create a fact question as to the existence of a valid arbitration agreement, then the issue must be resolved by the trial court or by a jury, if one is requested.'" SSC Selma Operating Co. v. Gordon, 56 So. 3d 598, 603 (Ala. 2010) (quoting Ex parte Caver, 742 So. 2d 168, 172 n.4 (Ala. 1999)); see also Oden Music, Inc. v. First Baptist Church of East Gadsden, 72 So. 3d 1238, 1241 (Ala. Civ. App. 2011). Our supreme court has stated that "[i]f [the] party [opposing arbitration] presents no evidence in opposition to a properly supported motion to compel arbitration, then the trial court should grant the motion to compel arbitration." Ex parte Greenstreet, Inc., 806 So. 2d 1203, 1209 (Ala. 2001).

As noted, in support of its motion to compel arbitration, the bank presented the most recent arbitration agreement signed by representatives of the PCBOE in 2022 ("the 2022 arbitration agreement"). The 2022 arbitration agreement recites that, "[i]n consideration of the loans, benefits, agreements, deposit accounts, or other services received directly or indirectly by the undersigned, as evidenced by previous, concurrent, or future documents, loans, accounts, or other services ('Bank Documents') from [the bank], [the PCBOE and

6

the bank] enter into [the 2022 arbitration agreement]." The 2022 arbitration agreement states that the terms

> "'Claim' or 'Claims' shall have the broadest definition possible, and include initial claims, counterclaims, cross-claims, and third-party claims based upon, but not limited to, the application of [the 2022 arbitration agreement], contract, tort, consumer rights, fraud, other intentional torts, constitution, statute, regulation, ordinance, common law, and any other matter at law or equity between [the PCBOE and the bank]."

In addition, the 2022 arbitration agreement specifies that the terms

> "'Dispute' and 'Disputes' shall refer to all disputes, Claims (as defined above), actions, breaches, disagreements, or controversies arising out of, or related to, or based upon any prior, current, or future agreement, Bank Documents, loan, account, service, activity, contract, transaction (proposed or actual), event, or occurrence, whether individual or joint."

As required, the bank also presented in support of its motion to compel arbitration evidence tending to establish that the business relationship between the PCBOE and the bank involved a transaction or transactions affecting interstate commerce. Wade averred in his affidavit that the PCBOE had written checks to persons or entities in various other states, including Georgia, Tennessee, Texas, and New York. The PCBOE did not challenge Wade's averments or present contradictory evidence relating to whether the business relationship

7

between it and the bank affected interstate commerce either before the trial court or in its brief on appeal. Thus, we will consider the PCBOE to have conceded that its business relationship with the bank that is memorialized in the account agreement affects interstate commerce.

In its response in opposition to the motion to compel arbitration, the PCBOE made several cursory arguments. The PCBOE first argued that the 2022 arbitration agreement was void because the essential elements of a contract, including consideration, were lacking, and it cited Ex Parte Grant, 711 So. 2d 464 (1997), in support of its argument. Relying on Armada Coal Export, Inc. v. Interbulk, Ltd., 726 F.2d 1566 (11th Cir. 1984), the PCBOE then argued that the 2022 arbitration agreement did not apply to the action because the PCBOE's claims against the bank sounded in tort. Next, citing Wells v. Mobile County Board of Realtors, 387 So. 2d 140 (Ala. 1980), the PCBOE contended that the 2022 arbitration agreement was unconscionable and overly broad. In addition, the PCBOE also stated in its response in opposition to the motion to compel arbitration that the "[p]ublic policy of this state holds void any agreement in advance to oust or defeat jurisdiction of all courts as to all differings between the parties." Finally, the PCBOE contended

8

that the bank's motion to compel arbitration had been "untimely filed" and that the bank had "substantially invoked the jurisdiction of this court." The PCBOE presented <u>no evidence</u> in support of its response in opposition to the bank's motion to compel arbitration.

The PCBOE failed to present any evidence or legal argument to establish the facts necessary to support its contention that the elements of a contract -- offer, acceptance, consideration, and mutual consent -- were lacking and, thus, that the 2022 arbitration agreement was invalid. The PCBOE's reliance on <u>Ex parte Grant</u> is misplaced. In <u>Ex parte Grant</u>, our supreme court determined that a document entitled "'Worksheet-Estimate' [that] specifically state[d] that it creates 'no contractual obligation or right to buy,' [was] not a contract" and, therefore, it said, the parties had not agreed to arbitrate any claims and the arbitration provision contained in the "Worksheet-Estimate" could not be enforced. 711 So. 2d at 464. The PCBOE presented no evidence or argument indicating that the PCBOE had not accepted an offer to enter into the 2022 arbitration agreement or that the 2022 arbitration agreement lacked consideration; nor did the PCBOE establish that the 2022 arbitration agreement indicated that it was not intended to form a

valid contract between the parties. The trial court did not have any evidence before it to support the conclusion that the 2022 arbitration agreement was not a valid contract.

Similarly, the PCBOE did not present to the trial court any factual evidence that would have bearing on its undeveloped argument that the 2022 arbitration agreement was unconscionable. See Fleetwood Enters., Inc. v. Bruno, 784 So. 2d 277, 281 (Ala. 2000) (stating that "the party asserting [the defense of unconscionability] bears the burden of proof" on that issue); Ex parte Napier, 723 So. 2d 49, 53 (Ala. 1998) ("Under general principles of law, the party asserting the defense of unconscionability has the burden of proving unconscionability."). The mere assertion of the defenses of invalidity or unconscionability by the PCBOE was not sufficient to create a fact question regarding the validity of the 2022 arbitration agreement. As previously noted, our supreme court has indicated that the failure of the party opposing arbitration to present evidence requires that a trial court grant the motion to compel arbitration. See Ex parte Greenstreet, Inc., 806 So. 2d at 1209; see also First Family Fin. Servs., Inc. v. Jackson, 786 So. 2d 1121, 1131 (Ala. 2000) ("A party must submit evidence in some form in order to preserve

10

for appellate review that party's contention of unconscionability as a defense to the enforcement of an arbitration agreement."). The trial court therefore could not have properly denied the bank's motion to compel arbitration on the ground that the 2022 arbitration agreement is unconscionable.

In addition, we reject the assertion by the PCBOE in its response in opposition to the motion to compel arbitration that tort claims are not subject to the arbitration agreement. The authority upon which the PCBOE relied in the trial court -- Interbulk -- is inapposite. Certainly, the United States Court of Appeals for the Eleventh Circuit concluded in Interbulk that the tort claims asserted by Armada Coal Export, Inc. ("Armada"), against Interbulk, Ltd., were not subject to arbitration. However, its holding was not so broad as to support the conclusion that no tort claims may be subject to an arbitration agreement.

Interbulk and Armada had entered into a charter-party agreement pursuant to which Armada would load coal onto Interbulk's ship. Armada did not timely load the coal as required by the charter-party agreement, and Interbulk sued Armada in the United States District Court for the Southern District of Alabama ("the federal district court").

11

When Interbulk sued Armada, it believed that Armada was not present in the southern district of Alabama, so Interbulk also sought and obtained a writ of foreign attachment of the coal that had been the subject of the charter-party agreement between the parties. Armada sought to quash the writ, stating that it, in fact, had been within the district. Armada deposited $750,000 in cash with the clerk of the federal district court in order to secure the return of the coal, offered a letter of credit to Interbulk, and requested that the writ of foreign attachment be quashed. The federal district court quashed the writ, but Interbulk refused to return the letter of credit to Armada.

Armada then sued Interbulk in an Alabama state court, seeking damages for wrongful and unlawful attachment of Armada's coal and for conversion of Armada's letter of credit. Interbulk removed Armada's state-court action to the federal district court and then moved to compel arbitration under the terms of the charter-party agreement; the federal district court granted that motion. Armada sought appellate review of the grant of Interbulk's request to compel arbitration, and the Eleventh Circuit Court of Appeals determined that, although the charter-party agreement had contained an expansive arbitration clause stating that

12

"'[a]ny dispute arising during the execution of the Charter Party shall be settled by arbitration,'" Armada's claims of wrongful attachment and conversion were essentially outside the scope of the arbitration agreement because, the court said, the "connection [between the business dealings memorialized by the charter-party agreement and the action seeking damages for unlawful attachment and conversion] is not sufficiently close to constitute a dispute arising during the execution, or performance, of the charter-party [agreement] itself." 726 F.2d at 1568.

By its terms, the 2022 arbitration agreement clearly applies to tort claims that arise out of an "account, service, activity, contract, transaction" involving the PCBOE's relationship with the bank. The PCBOE seeks damages from the bank based on the bank's allegedly honoring fraudulent checks and the resulting loss of funds from the PCBOE's bank account. Thus, the PCBOE's complaint seeks damages for the bank's handling of funds on deposit in the PCBOE's bank <u>account</u> and the bank's alleged negligence in performing the <u>service</u> of honoring fraudulent checks in <u>transactions</u> between the bank and the presenting entity or entities. We conclude, therefore, that the PCBOE's claims are clearly within the scope of the 2022 arbitration agreement.

We turn now to the PCBOE's allegation that the bank waived its right to enforce the 2022 arbitration agreement by substantially invoking the litigation process. Although at the time of the entry of the trial court's October 2024 order denying the bank's motion to compel arbitration the PCBOE was required to prove both that the bank "substantially invoked the litigation process <u>and</u> that [the PCBOE] suffered prejudice as a result,"[2] <u>Ex parte Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 494 So. 2d 1, 3 (Ala. 1986), our supreme court recently restated the test for establishing a waiver of the right to arbitration. In <u>CNU of Alabama, LLC v. Shakeena Cox</u>, [Ms. SC-2024-0060, Nov. 8, 2024] ___ So. 3d ___ (Ala. 2024), our supreme court explained that a showing of prejudice

---

[2]We note that the PCBOE did not mention the word "prejudice" in its response in opposition to the motion to compel arbitration, much less make "a showing of prejudice," and, thus, under the former standard applicable to establishing waiver of the right to arbitrate, the trial court's October 2024 order would be due to be reversed because, "even if we were to assume that [the bank's] filing responsive pleadings and its conducting discovery constitute 'substantial invocation of the litigation process,' [the PCBOE has] alleged no specific prejudice occasioned by [the bank's] activities in this litigation before it asserted the right to proceed under the [2022] arbitration [agreement]." <u>Allied-Bruce Terminix Cos. v. Dobson</u>, 684 So. 2d 102, 109-10 (Ala. 1995).

would no longer be required to establish that a party has waived the right to arbitration. Our supreme court stated:

> "Going forward, our standard for considering waiver in the arbitration context now asks, '"'whether the party's actions <u>as a whole</u> have substantially invoked the litigation process.'"' <u>Key [v. Warren Averett, LLC]</u>, 372 So. 3d [1132,] 1137 [(Ala. 2022)] (citations omitted). We will no longer require a party arguing waiver of an arbitration provision to meet a 'heavy' burden, just an ordinary one."

<u>Cox</u>, ___ So. 3d at ___.

In its response in opposition to the bank's motion to compel, the PCBOE asserted that "[t]he substantial activities of [the bank] in this action completes a waiver of any rights it may have to have this matter arbitrated." As recounted above, the bank's participation in the litigation before filing its motion to compel arbitration included filing an answer and a counterclaim in April 2024 and engaging in limited discovery -- i.e., propounding requests for admission, noticing (but not conducting) two depositions, and filing requests for production in furtherance of the canceled depositions. The bank filed its motion to compel arbitration just over six months after the complaint was filed and four months after it filed its answer to the complaint. With those facts in mind, we must determine whether the bank's "actions <u>as a whole</u> have substantially

15

invoked the litigation process." <u>Cox</u>, ___ So. 3d at ___ (internal quotation marks and citations omitted).

In its brief, the PCBOE states that

"[the bank] fully participated in discovery, filed motions, participated in pre-trial conferences, and filed a counterclaim seeking an award of attorney fees and damages.[3] [The bank] objected to mediation[4] and sought arbitration only after participating in at least fourteen documented court filings, court hearings, and receiving a trial setting.[5] All of its actions were consistent with its intent to follow the legal process and abandon its right to arbitrate."

"'Whether participation in an action is a waiver of the right to arbitration depends on whether the participation bespeaks an intention to abandon the right....'" <u>Ex parte Merrill Lynch, Pierce, Fenner & Smith</u>, 494 So. 2d at 3 (quoting 6 C.J.S. <u>Arbitration</u> § 37 (1975)). The law

---

[3]In its counterclaim, the bank did not seek an award of damages.

[4]The record contains no document indicating that the bank objected to the trial court's order that the parties submit their controversy to mediation.

[5]The record reflects that the bank filed four documents in the trial court: a notice of appearance, an answer and counterclaim, a notice of service of the requests for admission, and a notice of service of the deposition notices and associated requests for production. The record does not contain any indication that the bank requested a trial setting or what hearings, other than the motion hearing relating to the motion to compel arbitration, might have been held.

16

is well settled that the actions of answering a complaint and filing a counterclaim are not sufficient to amount to a substantial invocation of the litigation process. Voyager Life Ins. Co. v. Hughes, 841 So. 2d 1216, 1219 (Ala. 2001) (quoting Mutual Assurance, Inc. v. Wilson, 716 So. 2d 1160, 1164 (Ala. 1998), quoting in turn Ex parte Merrill Lynch, Pierce, Fenner, & Smith, 494 So. 2d at 3, quoting in turn Clar Prods., Ltd. v. Isram Motion Pictures, 529 F. Supp. 381, 383 (S.D.N.Y. 1982)) (stating that "'"'"[m]erely answering on the merits, asserting a counterclaim (or cross-claim) or participating in discovery, without more, will not constitute a waiver [of the right to arbitrate]"'"'"); see also Bridgestone Americas Tire Operations, LLC v. Adams, 264 So. 3d 833, 840 (Ala. 2018); Hoover Gen. Contractors-Homewood, 201 So. 3d 550, 554 (Ala. 2016). Our caselaw further provides that engaging in limited discovery is not typically considered sufficient to support a conclusion that a party has waived the right to arbitration. African Methodist Episcopal Church, Inc. v. Smith, 217 So. 3d 816, 835 (Ala. 2016) ("[A] party's mere participation in discovery is an insufficient basis upon which to conclude that that party has substantially invoked the litigation process."); Ex parte Merrill Lynch, Pierce, Fenner & Smith, 494 So. 2d at 3. In Ex parte Costa &

17

Head (Atrium), Ltd., 486 So. 2d 1272, 1277 (Ala. 1986), our supreme court, quoting Gavlik Construction Co. v. H.F. Campbell Co., 526 F.2d 777, 783 (3d Cir. 1975), stated that "'[r]ecent cases have only found waiver where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'" See also Smith, 217 So. 3d at 835. In addition, our supreme court has indicated that when a movant had engaged in "limited discovery" and only a "relatively short time [had] elapsed" between the service of the complaint and the filing of the motion to compel arbitration, the movant "had not substantially invoked the litigation process."[6] Ex parte Rager, 712 So. 2d 333, 336 (Ala. 1998) (declining to find waiver of the right to compel arbitration based on a four-month delay between receipt of service of the complaint and the filing of the motion to compel arbitration); see also Ex parte Merrill Lynch, Pierce, Fenner & Smith, 494 So. 2d at 3 (declining to find waiver of the right to compel arbitration where the motion to compel arbitration had been filed less than three

---

[6]We recognize that, in African Methodist Episcopal Church, Inc. v. Smith, 217 So. 3d 816, 836 (Ala. 2016), our supreme court indicated that "delay in moving for arbitration is of only minimal, if any, relevance to our consideration of … whether the [party moving to compel arbitration has] substantially invoked the litigation process."

months after the plaintiff had opted out of a federal action such that the need to proceed in the state court was triggered).

Under the facts of this particular case, we cannot conclude that the bank substantially invoked the litigation process such that its conduct "manifest[ed] an intent to abandon the right to proceed in arbitration." Smith, 217 So. 3d at 835. The bank's answer and counterclaim and its limited participation in discovery, most of which was never completed, simply does not "'bespeak[] an intention to abandon the right'" to arbitrate. Ex parte Merrill Lynch, Pierce, Fenner & Smith, 494 So. 2d at 3 (quoting 6 C.J.S. Arbitration § 37 (1975)). Accordingly, we reverse the October 2024 order of the trial court denying the bank's motion to compel arbitration, and we remand the case to the trial court for the entry of an order granting that motion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Hanson, J., concur.