NOT FOR PUBLICATION

In the

# United States Court of Appeals

## For the Eleventh Circuit

—————————————

No. 24-13114

Non-Argument Calendar

—————————————

JANET L. SCHMIDT,
JOHN FERNSTROM,
 as Trustee of Whiteacle Asset Trust,

             *Plaintiffs-Appellees,*

*versus*

JUAN C. ANTUNEZ,
KIMBERLY MARTINEZ-LEJARZA,

             *Defendants-Appellants.*

—————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cv-22464-RKA

—————————————

Before JILL PRYOR, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Janet Schmidt and John Fernstrom sued their former attorneys, Juan Antunez and Kimberly Martinez-Lejarza, alleging that they committed an invasion-of-privacy tort under Florida common law by publicly disclosing private facts regarding their attorney-client relationship. Antunez and Martinez-Lejarza responded with a motion to compel arbitration based on the retainer agreement Schmidt and Fernstrom signed. The district court denied the motion, concluding that the invasion-of-privacy claims fell outside the scope of the agreement's arbitration clause. This appeal followed, and after careful consideration, we affirm.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In 2021, Schmidt and Fernstrom were named as defendants in a deed rescission lawsuit in Florida state court. Schmidt was named in her personal capacity, while Fernstrom was named in his capacity as the trustee of an asset trust. They removed the lawsuit to federal court and hired Antunez and Martinez-Lejarza's law firm to represent them. Schmidt and Fernstrom signed a retainer agreement with the law firm. Both Antunez and Martinez-Lejarza appeared in the case, but after the district court remanded the rescission lawsuit, Schmidt and Fernstrom fired their firm. A fee dispute followed.

The retainer agreement between the parties contained the following arbitration clause:

> In the event there is any controversy or claim arising out of or related to fees, costs or any legal services or other services provided under this engagement

agreement, including, but not limited to, any contro-
versy or claim in any way involving allegations of
malpractice, any such dispute shall be resolved in
binding, confidential arbitration in Miami-Dade
County, Florida, administered by the American Arbi-
tration Association, before a panel of three arbitrators
appointed by the American Arbitration Association.
This agreement to arbitrate does not affect our right
to utilize a retaining lien or charging lien as necessary.

Based on this provision, Antunez filed an arbitration demand re-
garding the fee dispute with the American Arbitration Association.

Antunez then filed the demand—along with the retainer
agreement and their client billing records—on the public dockets
of four state court cases in which Schmidt was a party. The billing
records contained "descriptions of client conversations, research
conducted, and litigation strategies." Antunez did not represent
any party in the disputes and the filings were not made under seal.

As a result of the unsealed filings on the public dockets,
Schmidt and Fernstrom sued Antunez and Martinez-Lejarza in fed-
eral court alleging that they had committed a Florida invasion-of-
privacy tort by publishing the retainer agreement and billing infor-
mation on the dockets of four unrelated cases. Antunez and Mar-
tinez-Lejarza responded with a motion to compel arbitration based
on the arbitration clause in the retainer agreement. The district
court denied the motion, concluding that the "invasion-of-privacy
claim clearly f[ell] outside the scope of the [a]greement's arbitra-
tion clause." Antunez and Martinez-Lejarza appeal the denial of

their motion to compel. *See* 9 U.S.C. § 16(a)(1)(c) (granting appellate jurisdiction over an order denying a motion to compel arbitration).

## STANDARD OF REVIEW

We review de novo a district court's denial of a motion to compel arbitration. *Lubin v. Starbucks Corp.*, 122 F.4th 1314, 1319 (11th Cir. 2024). In doing so, we keep in mind the Federal Arbitration Act's "presumption of arbitrability," meaning that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* (citations omitted); *see also* 9 U.S.C. § 1 *et seq.* "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation" that we also review de novo. *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) (citation omitted); *Lubin*, 122 F.4th at 1319. A "party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *Telecom Italia,* 248 F.3d at 1114.

## DISCUSSION

The only issue before us is whether Schmidt and Fernstrom's tort claim, as alleged, falls within the scope of the retainer agreement's arbitration clause.[1] We express no opinion on the merits of the claim.

---

[1] Because the result is the same in either case, we assume—as the district court did—that Antunez and Martinez-Lejarza can enforce the retainer agreement, even though they did not sign the contract in their personal capacities.

The parties agreed to arbitrate "any controversy or claim arising out of or related to fees, costs or any legal services or other services provided under th[e] engagement agreement." The district court determined that Antunez and Martinez-Lejarza's alleged publishing of private information on unrelated court dockets—several months after the termination of their firm's representation—did not arise out of, or relate to, any fees, costs, or legal services provided under the retainer agreement. We agree.

"When determining if a dispute 'arises out of' or 'relates to' an underlying contract, we generally consider whether the dispute in question was an immediate, foreseeable result of the performance of contractual duties." *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021) (cleaned up). Put another way, "there must be 'some *direct relationship* between the dispute and the performance of duties specified by the contract' in order to find that the dispute arises out of, relates to, or is connected to the underlying agreement." *Id.* (emphasis added) (citation omitted); *see also Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (discussing the limits of "arising out of" and "related to" language in arbitration agreements).

Even accounting for the "presumption of arbitrability," there is no direct relationship here. *Lubin*, 122 F.4th at 1319; *see also Hearn*, 922 F.3d at 1213. The alleged publication of private information to third parties, months after the termination of the retainer agreement, was not an immediate or foreseeable result of Antunez and Martinez-Lejarza's contractual duties under the

agreement.[2]  Antunez and Martinez-Lejarza were not providing "any legal services or other services . . . under th[e] engagement agreement" when they allegedly published Schmidt and Fernstrom's private information.  Indeed, as the district court noted, Antunez and Martinez-Lejarza could not have been providing services "under th[e] engagement agreement" when they committed the conduct underlying the alleged tort because the agreement had already been terminated.[3]  Thus, Schmidt and

---

[2] While Antunez and Martinez-Lejarza ultimately would not have been able to publish Schmidt and Fernstrom's information without the retainer agreement, that connection is not close enough to trigger the arbitration clause. *See Armada Coal Exp., Inc. v. Interbulk, Ltd.*, 726 F.2d 1566, 1568 (11th Cir. 1984) ("While certainly there is a connection between Armada's claims and the charter party relationship between Armada and Interbulk—*i.e.*, but for the two parties having entered into this business arrangement which was imperfectly performed, there would have been no wrongful attachment and conversion—such connection is not sufficiently close to constitute a dispute arising during the execution, or performance, of the charter party itself."); *Doe*, 657 F.3d at 1218 (noting that the term "related to" is "limiting language" that "marks a boundary by indicating some sort of direct relationship; otherwise, the term would stretch to the horizon and beyond").

[3] On appeal, Antunez and Martinez-Lejarza argue that by reaching this conclusion the district court added an artificial limiting condition to the arbitration clause.  We disagree.  The arbitration clause *itself* limits its scope to the "fees, costs or any legal services or other services provided under" the retainer agreement.  Antunez and Martinez-Lejarza could not have been providing services "under" the retainer agreement when they allegedly published Schmidt and Fernstrom's private information because the agreement had been terminated several months earlier.

Fernstrom's invasion-of-privacy claim falls outside the scope of the arbitration clause.

Antunez and Martinez-Lejarza offer two arguments against this conclusion, but both fall short.[4] First, they contend that the district court missed the second part of the arbitration clause, which they say imposed a contractual duty of confidentiality on the parties. They conclude that Schmidt and Fernstrom's invasion-of-privacy claim is arbitrable because it alleges a violation of that duty.

But the arbitration clause imposed no such duty of confidentiality.[5] The portion of the clause Antunez and Martinez-Lejarza rely on states that "any such dispute shall be resolved in binding, confidential arbitration in Miami-Dade County, Florida, administered by the American Arbitration Association, before a panel of three arbitrators appointed by the American Arbitration Association." Antunez and Martinez-Lejarza base their argument on the word "confidential" in this section, but "confidential"—as used in

---

[4] Schmidt and Fernstrom argue that the appellants waived these arguments by failing to raise them below. But they misunderstand the doctrine of waiver. Because Antunez and Martinez-Lejarza properly preserved the *issue* of the clause's interpretation below, they can present new arguments in support of their position on appeal. *See In re Home Depot Inc.*, 931 F.3d 1065, 1086 (11th Cir. 2019) ("[T]here is a difference between raising new issues and making new arguments on appeal. If an issue is 'properly presented, a party can make any argument in support of that [issue]; parties are not limited to the precise arguments they made below.'" (citation omitted)).

[5] In fact, there is not a confidentiality provision *anywhere* in the retainer agreement.

this context—does not impose an affirmative duty on the parties to guard private information.  Rather, it modifies the word "arbitration" and specifies the type of arbitration that should proceed if a claim concerning the covered subjects arises.  *See ECB USA, Inc. v. Chubb Ins. Co. of New Jersey*, 113 F.4th 1312, 1323 (11th Cir. 2024) ("'[A]djectives, adverbs, and adverbial or adjectival phrases' normally modify the closest reasonable noun or verb." (citation omitted)).  Antunez and Martinez-Lejarza's interpretation impermissibly stretches the meaning of "confidential" beyond its context in the arbitration clause.

Second, Antunez and Martinez-Lejarza argue that the arbitration clause should apply because Schmidt and Fernstrom's tort claim is "inextricably intertwined" with the retainer agreement.  They emphasize that the complaint mentions the retainer agreement fourteen times and that it is the only document that they both allegedly published.

Although the retainer agreement was one of the documents allegedly published, that does not mean that Schmidt and Fernstrom's tort claim arises out of (or relates to) the terms of the retainer agreement.  Schmidt and Fernstrom's tort claim arises from Florida common law, not from the retainer agreement.  *See Allstate Ins. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003) (describing the common-law tort of "public disclosure of private facts" as "the dissemination of truthful private information which a reasonable person would find objectionable" (citation omitted)).  The fact that the retainer agreement *was* the private information allegedly published

is incidental and does not trigger the agreement's arbitration clause. *See Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 639 (Fla. 1999) ("If . . . the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties, then a dispute regarding such a breach is not one arising from the contract, but sounds in tort.  Therefore, a contractually-imposed arbitration requirement . . . would not apply to such a claim." (citations omitted)).

In short, the district court got it right: Schmidt and Fernstrom's alleged tort claim falls outside the scope of the retainer agreement's arbitration clause.

**AFFIRMED.**